UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | |
|---|---|
| **POLYLAST SYSTEMS, LLC**<br><br>**Plaintiff,**<br><br>v.<br><br>**HAYWARD BROS INC., LOUIE HAYWARD aka LOUIS HAYWARD, DEBORAH CORNELL aka DEBORAH HAYWARD, CAMELLIA BOUTIQUE, LLC, and ASHTIN BURKEY**<br><br>**Defendants.** | Civil Action No. 6:25-CV-040-H |

### PLAINTIFF'S BRIEF IN RESPONSE OT THE COURT'S NOVEMBER 17, 2025 ORDER (DKT. NO. 80) REGARDING PLAINTIFF IDENTITY, CAPACITY, AND STANDING

Plaintiff Polylast Systems, LLC ("Polylast") respectfully submits this brief in response to the Court's November 17, 2025 Order (Dkt. No. 81), which directs Polylast to address three discrete questions: (1) whether the plaintiff in this action is, in fact, Polylast Systems, LLC; (2) if not, whether the plaintiff nonetheless has capacity or authorization to sue using Polylast's name; and (3) if not, whether the plaintiff otherwise has standing to sue under the name of David Soto or any other authorized party. This brief provides the requested clarifications. As shown below, the plaintiff is properly Polylast Systems, LLC; Polylast has full legal capacity and authorization to prosecute this action; and, even if capacity were disputed (it is not), the real party in interest— including the patent owner, King Coast Inc.—possesses full Article III standing. Because Polylast Systems, LLC is the same legal entity that filed this action and continues to exist as that same entity under Texas law, the remaining questions in the Court's Order do not arise. Questions (2)

and (3) only apply if the plaintiff were not Polylast, but it is. There is therefore no need to analyze capacity under any other name. Polylast—and only Polylast—is the plaintiff in this case.

## I. THE PLAINTIFF IN THIS ACTION IS, IN FACT, POLYLAST SYSTEMS, LLC

Polylast Systems, LLC is and always has been the same legal entity that filed this action. Nothing about the company's legal existence has changed. The LLC was not dissolved, renamed, merged, or replaced. Nor has any court or agency questioned its continued existence. Under Texas law, an LLC's ownership may change, but the entity does not. TEX. BUS. ORGS. CODE §§ 3.005, 101.103. A change in members does not create a new company, does not affect its contracts, and does not alter its ability to sue or be sued.

Thus, Polylast Systems, LLC is the plaintiff—full stop. There is no competing entity, no successor entity, and no "other" Polylast.

Defendants' contrary suggestion rests solely on a single letter from David Laurence, who has no legal authority whatsoever to represent the Peter Laurence Living Trust, the Estate of Peter Laurence, or Polylast Systems, LLC. The letter is inaccurate, speculative, and legally meaningless. It does not change the company's existence; it does not invalidate the transfer of membership interests; and it does not create any question about the identity of the plaintiff.

Moreover, nothing about the membership purchase affects Polylast's rights in this lawsuit. Polylast is not asserting patent claims based on ownership—it asserts them based on its exclusive enforcement license. The patents themselves are owned by King Coast Inc., as reflected in USPTO records. Polylast's contractual right to enforce is independent of membership ownership and remains fully valid regardless of who holds the LLC interests.

Defendants' attempt to transform a third party's unauthorized letter into a challenge to the plaintiff's identity has no factual, legal, or evidentiary basis. The entity remains exactly the

same entity that has operated continuously for years, that executed the license agreement with King Coast, and that has actively litigated this case from its inception. The Court's inquiry can be answered plainly: the plaintiff is Polylast Systems, LLC, the very same entity that filed the Complaint.

Moreover, David Laurence's statements that the "purchase of Polylast Systems LLC… is not a legitimate sale as there is an absence of any record" are factually false and legally baseless. The membership interests in Polylast Systems, LLC were lawfully transferred pursuant to a fully executed Membership Interest Purchase Agreement. That agreement became effective immediately upon execution by the only person who had authority to act—Peter Laurence, during his lifetime. The mere fact that Peter Laurence's estranged son cannot find a physical copy of the purchase agreement is meaningless. Texas LLC law does not require probate approval, trust approval, or third-party consent for such a transfer to be valid. TEX. BUS. ORGS. CODE §§ 101.103–.109. Nor does it require that relatives of the deceased receive physical copies of corporate documents for a sale to be "legitimate". Accordingly, David Laurence's claim that the trust owns Polylast is incorrect as a matter of law and fact. His statement carries no legal effect, because he is neither trustee, executor, nor successor representative and has no authority to speak for the trust or estate.

Additionally, even if David Laurence were a trustee—which he is not—neither he nor the trust has any authority to retroactively invalidate a fully executed business transaction entered into by Peter Laurence before his death. A trust beneficiary cannot disclaim, reinterpret, or undo a contract simply because he dislikes its results or because third parties are whispering in his ear. Defendants' attempt to manufacture a dispute by soliciting an unauthorized letter from a non-trustee is improper and irrelevant. The Court should reject this tactic outright.

## II. EVEN IF THE COURT BELIEVED THERE WAS SOME QUESTION ABOUT OWNERSHIP, POLYLAST HAS FULL LEGAL CAPACITY AND AUTHORIZATION TO SUE IN ITS OWN NAME

Even assuming *arguendo* that the membership purchase were somehow disputed (it is not), Polylast Systems, LLC unquestionably has capacity and authorization to sue in its own name. Texas law is clear that injuries to an LLC or its business must be brought by the LLC itself, not by individual members, beneficiaries, or third parties. See *Siddiqui v. Fancy Bites, LLC*, 504 S.W.3d 349, 359–60 (Tex. App.—Houston [14th Dist.] 2016) ("It is the nature of the wrong… and not the existence of injury, that determines who may sue," and claims belonging to the entity must be brought by the entity); *Pike v. Texas EMC Mgmt., LLC*, 610 S.W.3d 763, 783 (Tex. 2020) ("Ordinarily, the cause of action for injury to the property of a corporation, or the impairment or destruction of its business, is vested in the corporation."). Thus, an LLC is a juridical entity separate from its members, and it retains full litigation capacity regardless of internal ownership disputes, alleged irregularities in transfers, or questions among members

Polylast has continuously conducted business under its existing LLC charter, maintains its registration in Texas, continues to operate with designated managers and officers, and has taken all corporate actions necessary to authorize litigation. Defendants identify no defect in Polylast's organizational documents, corporate existence, or authority to prosecute claims. No statute or case law requires an LLC to prove its internal membership records to an opposing party—or to the Court—as a precondition to filing suit.

Further, Defendants' suggestion that Polylast somehow lacks authorization is unsupported and stems entirely from the unauthorized letter of David Laurence, who has no power to bind the trust, the estate, or the company. Even if the membership interests were in

dispute—and they are not—Texas law provides that the managers, not the members, control litigation authority unless the company agreement provides otherwise. TEX. BUS. ORGS. CODE §§ 101.251–.254. The managers of Polylast authorized this lawsuit, executed the pleadings, and continue to direct the litigation. That is all the law requires.

Just as importantly, Polylast's patent claims do not arise from ownership of the LLC membership interest. They arise from Polylast's exclusive enforcement license from King Coast. Contractual enforcement authority is independently sufficient to authorize Polylast to sue in its own name. See *WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1265 (Fed. Cir. 2010) (entity with exclusionary enforcement rights has standing irrespective of patent ownership). Nothing about Polylast's internal ownership structure alters its independent contractual right—indeed, obligation—to bring infringement actions.

Thus, even if the Court assumed some unresolved dispute concerning the membership transfer (again, there is none), that issue would not impair Polylast's legal capacity or its authorization to sue in its own name. The entity exists, the managers authorized the suit, and its contractual enforcement rights require no further approval from any alleged member, trustee, or estate representative.

### III. DAVID LAURENCE HAS NO AUTHORITY TO SPEAK FOR THE TRUST, THE ESTATE, OR POLYLAST, AND DEFENDANTS' RELIANCE ON HIS STATEMENTS IS IMPROPER AND LEGALLY MEANINGLESS

Defendants' sur-reply relies almost entirely on a letter from David Laurence—an individual who has no authority whatsoever, no personal knowledge, and no legal capacity to speak for the Peter Laurence Living Trust or Polylast Systems, LLC. His statements are not competent evidence and carry no legal effect. They do not undermine the identity of the plaintiff,

do not affect the validity of the Membership Interest Purchase Agreement executed by Peter Laurence during his lifetime, and do not create any genuine dispute about Polylast's structure or standing. His statements are not only incorrect—they are legally meaningless and cannot create a factual dispute where none exists.

First, David Laurence is not a trustee, successor trustee, executor, personal representative, or agent for any relevant entity. The Trust instrument names two successor trustees—neither of whom is David Laurence. No probate has been opened, and no court has appointed him as an executor or representative of Peter Laurence's estate. Under well-established Texas law, only a duly appointed trustee or personal representative may act on behalf of a trust or estate. TEX. EST. CODE §§ 351.054, 401.001.

David Laurence is merely a beneficiary, and beneficiaries have no authority to bind a trust or invalidate contracts executed by the trustee or the settlor. TEX. PROP. CODE §§ 112.051, 113.018. A beneficiary has no authority to enter into, repudiate, or dispute contracts executed by the trustee/settlor during life, nor may a beneficiary speak for the trust in any legal capacity. Accordingly, David Laurence's letter is not—even in the most generous interpretation—an act of any legal entity. It is merely a personal opinion from an uninvolved individual.

Second, the Trust itself confirms that David Laurence has no personal knowledge of Peter Laurence's business dealings of any kind. The Trust instrument states that Peter and his children "have not had any significant contact much of their life." This is not casual language; it is a direct acknowledgment from Peter Laurence that his children, including David, did not meaningfully participate in his life, his business affairs, or his decisions. A person who lacked a relationship with the decedent, lacked involvement in the business, and lacked access to records

cannot possibly offer competent testimony about events he did not witness. Fed. R. Evid. 602 squarely bars such speculation. Someone who had no contact with the decedent and no involvement in his company cannot possibly declare what transactions occurred or did not occur. David Laurence's assertions are therefore inadmissible, unreliable, and entitled to no weight.

Third, the Membership Interest Purchase Agreement was validly and fully executed by the only person who had authority to sign it—Peter Laurence himself during his lifetime. He executed the agreement with counsel, and with the knowledge and involvement of both successor trustees: Paul Finch Jr., an experienced businessman, and the second successor trustee, who was Peter's accountant. These individuals had actual authority and were fully aware of the transaction at the time. Their knowledge corroborates the validity of the purchase agreement and the transfer of membership interests. David Laurence—who was not present, not involved, and not informed—cannot rewrite history years later to undo a transaction his father lawfully completed before his death.

Moreover, Peter Laurence himself executed the Membership Interest Purchase Agreement prior to his death, and he executed the assignment of the patents to King Coast. These documents are binding. Neither a beneficiary nor a third party can retroactively invalidate a legally executed contract. Texas law does not permit a trust beneficiary to "undo" or "reinterpret" acts taken by the trustee/settlor during his lifetime. See TEX. BUS. ORGS. CODE §§ 101.103–.109.

Defendants' attempt to elevate David Laurence's uninformed letter over Peter's own signed contracts is improper, unsupported, and contrary to law.

Fourth, Defendants' reliance on David Laurence's statements is improper. They have inserted a non-party, non-representative, and legally powerless individual into the litigation

solely to manufacture a false factual dispute about Polylast's existence and ownership. A litigant may not coordinate with outside third parties to influence active litigation through extra-record, self-serving statements, especially when the third party lacks authority and personal knowledge. Courts reject such tactics as improper and unreliable.

It is apparent that Defendants solicited his letter specifically to influence pending litigation, despite knowing that he lacks authority to speak for the trust or the estate. Attempting to circumvent discovery by procuring extra-judicial statements from an unauthorized third party is improper, prejudicial, and inconsistent with the orderly administration of justice. Courts routinely reject attempts to rely on informal out-of-court statements from individuals with no legal capacity or personal knowledge. The conduct here underscores the weakness of Defendants' position and highlights the lengths they are willing to go to manufacture a dispute where none exists.

Finally, even if David Laurence's statements had any factual basis—which they do not—they would still be legally irrelevant. The identity of Polylast's members has no bearing on this lawsuit. Polylast asserts patent claims based on its exclusive enforcement rights granted by King Coast Inc., and not on ownership of the patents themselves. King Coast is the record owner of the patents, as reflected in USPTO assignment records. Polylast's enforcement rights remain fully valid regardless of who holds membership interests in the LLC.

In sum, David Laurence's assertions carry no authority, no legal effect, and no evidentiary value. They cannot create doubt about Polylast's identity, authority, or standing, and Defendants' reliance on them underscores the weakness of their position rather than supporting it.

For these reasons, the Court should disregard David Laurence's letter entirely. It is legally meaningless, factually incorrect, and improperly solicited. It provides no basis to question the identity of the plaintiff, the validity of the membership transfer, or Polylast's standing.

## IV. EVEN IF THE COURT WERE TO QUESTION POLYLAST'S OWNERSHIP STRUCTURE, POLYLAST SYSTEMS, LLC HAS FULL CAPACITY AND AUTHORIZATION TO SUE IN ITS OWN NAME

Even assuming *arguendo* that the Court were to credit any portion of David Laurence's unauthorized statements—which it should not—Polylast Systems, LLC still unquestionably has capacity and full legal authorization to sue in its own name.

Under Texas law, an LLC's capacity to sue does not depend on its members, on probate proceedings, or on internal disputes among beneficiaries of a trust. TEX. BUS. ORGS. CODE §§ 101.105, 5.201. An LLC is a separate legal person with independent existence. It does not rise or fall based on changes in ownership. A transfer of membership interests—whether contested or not—does not affect the LLC's legal capacity to bring suit, defend suit, or enforce contractual and statutory rights.

Thus, even if the membership transfer were disregarded entirely (it should not be), Polylast Systems, LLC would still exist, and would still have the same legal rights and obligations it held on the day this case was filed. No Texas authority suggests otherwise. Indeed, Texas law expressly provides that membership disputes are internal matters that do not affect the LLC's ability to litigate. TEX. BUS. ORGS. CODE § 101.112.

Further, Polylast's authority to sue arises not from internal ownership, but from its exclusive enforcement rights granted directly by King Coast Inc. under the License Agreement. Section 9.2 of the Agreement expressly provides that Polylast "shall diligently pursue, control,

and maintain all actions for infringement as though Licensee were the owner," and that King Coast "shall, at Licensee's request, join as a party-plaintiff in any such action to confer standing." This is all that matters for purposes of this litigation: Polylast's right to enforce does not depend on who owns the membership interests in Polylast, because King Coast—the patent owner—contractually granted Polylast that right.

No aspect of the sur-reply undermines that fact. Nothing in Defendants' filings disputes King Coast's ownership, the validity of the License Agreement, or Polylast's right to enforce under it. Defendants instead focus on the entirely separate question of who owns the LLC—a question irrelevant to this case and one that Defendants have no legal standing to raise.

The Court's question therefore has a clear answer:

Polylast has full capacity and authorization to sue in its own name, regardless of any alleged dispute about membership interests.

## V. EVEN IF THE COURT QUESTIONED THE PLAINTIFF'S NAME, POLYLAST STILL POSSESSES STANDING, AND ANY PRUDENTIAL CONCERNS ARE FULLY CURED BY KING COAST'S JOINDER

Even assuming, solely for argument's sake, that Polylast Systems, LLC were mislabeled or that a membership-transfer dispute existed (none does), Polylast still possesses Article III standing to pursue this action. The Federal Circuit has made clear that constitutional standing in patent cases turns on exclusionary rights, not on corporate ownership disputes or technicalities of entity naming. See *WiAV*, 631 F.3d at 1265–66. A party suffers an injury in fact if it is legally entitled to exclude others from practicing the patented invention. *Id*.

Polylast unquestionably holds such exclusionary rights. Under Section 9.2 of its License Agreement with King Coast, Polylast is vested with the exclusive right and duty to enforce the patents-in-suit within its commercial field. That contractual right alone satisfies Article III.

Moreover, even where a party lacks "all substantial rights" in the patent, the Federal Circuit has held—repeatedly and unequivocally—that this is not a constitutional standing defect, but a prudential Rule 19 issue that is cured by joining the patent owner. See *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1235–36 (Fed. Cir. 2019) (Whether a party possesses all substantial rights in a patent goes to prudential standing… A defect is cured when the patent owner is joined.). Standing does not evaporate because the licensee files initially without the patentee; the remedy is simply to join the patentee.

That is precisely what happened here.

King Coast—the patent owner of record—has already consented to join this action. Polylast has already moved for joinder, and nothing in Defendants' filing disputes King Coast's ownership or willingness to appear. Once King Coast is joined, every prudential issue evaporates entirely. See *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005) ("The defect was cured by joinder of the patent owner.").

Defendants' attempt to transform a non-issue into a jurisdictional crisis ignores these controlling authorities. Even if Polylast's internal ownership were unsettled (it is not), even if the company name were disputed (it is not), and even if David Laurence's unauthorized letter created confusion (it does not), the law is crystal clear:

Polylast has Article III standing because it holds exclusionary rights, and any prudential standing question is entirely cured through joinder of King Coast.

This Court therefore need not dismiss or delay anything. The governing precedent resolves the issue: the case proceeds.

## VII. DEFENDANTS' ATTEMPT TO OBTAIN CONFIDENTIAL PURCHASE DOCUMENTS IS IMPROPER, OUTSIDE THE SCOPE OF THIS CASE, AND LEGALLY IRRELEVANT

Defendants go a step further in their improper reliance on David Laurence's unauthorized letter by attempting to convert this patent, trade secret, and tort action into a dispute over Polylast's internal business transactions. Their demand for a confidential Membership Interest Purchase Agreement—outside of discovery, outside of the Federal Rules, and entirely unrelated to the patents-in-suit—is improper and should be rejected outright.

First, Defendants are not entitled to Polylast's confidential business agreements, despite defense counsel's multiple statements to the contrary. Nothing in their motion or sur-reply explains how the terms of a membership sale between Polylast and FreshTek could have any bearing on the issues before the Court. The identity of the plaintiff does not hinge on Defendants' review of private commercial documents. Texas law is clear: an LLC remains the same legal entity regardless of whether ownership interests change hands, and the validity of a business transaction is not something adverse litigants get to audit. The Court did not request production of the purchase agreement, nor would such production be appropriate in response to a motion to dismiss.

Second, requesting such documents outside of any discovery procedure is highly improper. If Defendants believed the purchase documents were relevant—and they are not—the proper mechanism would be a Rule 34 discovery request, not a disguised request embedded in a motion to dismiss or a sur-reply. Even then, discovery would be limited by Rule 26(b), which

requires relevance to a claim or defense. Defendants cannot bypass these rules by prompting a third party to generate a letter, then demanding access to sensitive documents based on the misinformation that letter contains.

      Third, the document is irrelevant because the membership purchase has no connection to Polylast's standing. Polylast's patent claims derive from its license agreement with King Coast—not from ownership of the LLC membership interest. Whether FreshTek purchased the LLC from Peter Laurence has no effect on the validity, scope, or enforceability of Polylast's independent license rights, which remain fully intact regardless of who holds the LLC's membership interest.

      Fourth, the demand for the purchase agreement appears to be fueled not by legal necessity but by improper coordination with David Laurence. Defendants' sudden interest in internal Polylast transactions only arose after they made contact David with David and conspired to launch uninformed and unauthorized accusations. Defendants are not permitted to work with third parties to influence the litigation through back-channel statements, nor may they use such statements as a vehicle to intrude into confidential business matters. The attempt to obtain the purchase agreement, which defense counsel has inappropriately attempted to do on several occasions, is simply an extension of that improper effort.

      Finally, the purchase agreement is unnecessary because Peter Laurence's own actions confirm the legal relationships at issue. Peter personally executed the assignment of the patents to King Coast, and that assignment is recorded with the USPTO. Polylast's license agreement with King Coast was likewise executed with Peter's full knowledge and participation. Those documents—not Defendants' speculation about internal ownership matters—govern the standing analysis.

It is Plaintiff's belief that the letter from David Laurence was solicited by Defendants in an attempt to not only create a dispute where none exists, but to obtain confidential business documents to which they are not entitled. In short, Defendants' attempt to obtain confidential business documents is improper, irrelevant, and contrary to the structure of the Federal Rules. The Court's inquiry does not require production of the purchase agreement, and Defendants' tactic should be rejected.

## VIII. CONCLUSION

For the reasons set forth above, the Court's questions can be answered clearly and decisively:

(1) The plaintiff in this action is Polylast Systems, LLC—the same legal entity that filed the Complaint, that executed the license agreement with King Coast, and that has continuously existed and operated without interruption.

(2) Because the plaintiff is, in fact, Polylast Systems, LLC, there is no need to assess capacity under any alternative name. Polylast is the proper party, and its authority to sue is fully intact.

(3) Because Polylast is the correct plaintiff, there is no scenario in which the claims must instead be brought in the name of Soto or any other person or entity.

No evidence—competent or otherwise—contradicts these points. Defendants' only source of confusion is an unsolicited letter from a non-party who has no legal authority to speak for the trust, the estate, or Polylast. That letter cannot create a factual dispute where none exists and cannot override the binding contracts executed by the only person with authority to act at the time—Peter Laurence himself. The membership transfer was valid, fully executed, and requires

no probate approval. And critically, the ownership of Polylast has no bearing on Polylast's right to sue as the exclusive enforcement licensee of King Coast.

In short, there is no defect in identity, no defect in capacity, and no defect in standing. The plaintiff is exactly who the caption says it is, and its right to maintain this action—particularly with the patent owner soon to be joined upon the Court's approval—could not be clearer. Defendants' attempt to inject confusion through extra-record materials solicited from an unauthorized third party is improper, unsupported, and legally irrelevant.

Because the record is now complete, and because the issues have been fully briefed, Polylast respectfully submits that no further hearing is necessary. The Court can and should resolve the standing and capacity issues on the existing papers and allow the case to proceed to the merits without further delay.

WHEREFORE, Plaintiff Polylast Systems, LLC respectfully requests that the Court find that Polylast is the proper plaintiff, that no defect exists requiring substitution or dismissal, and that the litigation proceed accordingly.

    Respectfully submitted,

    LEMICK LAW, LTD.
    2460 Dundee Rd., Suite 474
    Northbrook, IL 60065
    847/409-3988
    tlemick@lemicklaw.com

    By: __/s/ Taylor Lemick_____
    Taylor Lemick
    State Bar No. 6327224
    With local counsel:
    Gossett, Harrison, Millican & Stipanovic, P.C.
    Paul D. Stipanovic
    State Bar No. 00795669

    COUNSEL FOR PLAINTIFF, POLYLAST
    SYSTEMS, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on the 24th day of November, 2025 a true and correct copy of the above and foregoing was filed with the Court via its ECF System, which will send notification of such filing to all counsel of record who have appeared in this action.

\s\   Taylor Lemick<br>Taylor Lemick