Case 6:25-cv-00040-H

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### SAN ANGELO DIVISION

POLYLAST SYSTEMS, LLC

Plaintiff,

v.

HAYWARD BROS INC., LOUIE HAYWARD aka LOUIS HAYWARD, DEBORAH CORNELL aka DEBORAH HAYWARD. CAMELLIA BOUTIQUE, LLC, and ASHTIN BURKEY

Defendants.

## MOTION FOR LEAVE TO FILE AMICUS BRIEF
### alongside of the Amicus Brief
### as ordered per Dkt. No. 81

## INTEREST OF AMICUS CURIAE

It is the interest of Amicus David Laurence that the United States District Court Northern District of Texas San Angelo Division receives notice and has awareness of the highly questionable standing of the Plaintiff. The assertion that an unnamed Plaintiff (by conceal of notice to the court and all public record) has any authority to assert claims in the name of POLYLAST SYSTEMS LLC requires the scrutiny of disclosure and discovery as any damages awarded to this unnamed Plaintiff (a/k/a David Soto) would run contrary to the Clean Hands Doctrine while creating significant, harmful and mis-directed consequence to both the Defendants and Amicus David Laurence. Furthermore, it is the concern of Amicus David Laurence that adjudication of this case brought forth by David Soto and Taylor Lemick when they do no have any authority will wrongfully "endorse" their

ownership in the eyes of the court. Conversely, it is the interest of David Laurence that this case be dismissed with prejudice and the Court orders any purported Purchase Agreement rescinded and void ab initio.

Amicus David Laurence is the son of Peter Laurence. Peter Laurence (deceased February 10, 2025) is the founder of POLYLAST SYSTEMS, LLC and Polylast Premier, LLC. Peter Laurence is also the inventor (USPTO) of the three (3) patents that are subject to this litigation.

David Laurence is the Primary Beneficiary of the PETER LAURENCE LIVING TRUST dated August 16, 2005 and also next of kin on all assets held outside of the PETER LAURENCE LIVING TRUST dated August 16, 2005.

The Membership Interests (100%) of POLYLAST SYSTEMS LLC are currently titled, funded to and held in the PETER LAURENCE LIVING TRUST which is currently being administered by the Successor Trustee in concert with Probate by Peter Laurence's estate attorney who is also the Trust Protector.

Amicus David Laurence believes his brief will assist the Court by adding clarity on both the sequence of events that:

1) Leave Mr. Soto and Ms. Lemick unempowered to bring any lawsuit or assert any claims in the name of POLYLAST SYSTEMS LLC. and

2) Highlight the their documented and egregious actions that bring full view of their patterned intent to deceive both inside and outside of this lawsuit

It is noted the request of Amicus David Laurence to file an Amicus Curiae was opposed by Plaintiff's Counsel (Ms. Lemick) on October 29th, 2025 (via email) while it has been unopposed by the Defendant's Council.

Case 6:25-cv-00040-H

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# SAN ANGELO DIVISION

**POLYLAST SYSTEMS, LLC**

Plaintiff,

v.

**HAYWARD BROS INC., LOUIE HAYWARD aka LOUIS HAYWARD, DEBORAH CORNELL aka DEBORAH HAYWARD. CAMELLIA BOUTIQUE, LLC, and ASHTIN BURKEY**

Defendants.

## BRIEF OF AMICUS CURIAE BY DAVID LAURENCE IN SUPPORT OF DEFENDANTS' MOTION FOR DISMISSAL AND FURTHER REMEDY FOR AMICUS DAVID LAURENCE

### INTEREST OF AMICUS CURIAE

Amicus David Laurence is the son of Peter Laurence. Peter Laurence (deceased February 10, 2025) is the founder of POLYLAST SYSTEMS, LLC and Polylast Premier, LLC. Peter Laurence is also the inventor (USPTO) of the three (3) patents that are subject to this litigation.

David Laurence is the Primary Beneficiary of the PETER LAURENCE LIVING TRUST dated August 16, 2005 and also next of kin on all assets held outside of the PETER LAURENCE LIVING TRUST dated August 16, 2005.

The Membership Interests (100%) of POLYLAST SYSTEMS LLC are titled, funded to and held in the PETER LAURENCE LIVING TRUST which is currently being

administered by the Successor Trustee in concert with Probate by Peter Laurence's estate attorney who is also the Trust Protector.

It is the interest of Amicus David Laurence that the United States District Court Northern District of Texas San Angelo Division receives notice and has awareness of the highly questionable standing of the Plaintiff. The assertion that an unnamed Plaintiff (by conceal of notice to the court and all public record) has any authority to assert claims in the name of POLYLAST SYSTEMS LLC requires the scrutiny of disclosure and discovery as any damages awarded to this unnamed Plaintiff (a/k/a David Soto) would run contrary to the Clean Hands Doctrine while creating significant, harmful and mis-directed consequence to both the Defendants and Amicus David Laurence.

## INTRODUCTION

POLYLAST SYTEMS LLC was founded by Peter Laurence in 2010. In 2019, a Chapter 11 Voluntary Petition was filed and the Chapter 11 (Subchapter V) was discharged with final decree issued on October 21st, 2021. Although the Bankruptcy was closed, it is important know the Arizona Bankruptcy Court's <u>approved Creditor Payment Plan survives with significant debt still due and payable</u> under this plan.

In 2021, Pete Laurence who was 76 year old became very sick requiring surgery while working through the court approved bankruptcy plan and efforts to sustain the challenged operations of POLYLAST SYSTEMS LLC. In his struggling efforts, he moved the production facility from Scottsdale, AZ to Coleman, TX and subsequently ceased internal production while outsourcing all production to maintain operations and the sale of material for distribution.

In September 2023, Pete Laurence was introduced to Louis Hayward for the purpose of creating a partnership to fortify POLYLAST SYSTEMS LLC. Louis Hayward had production experience and investor access that created the foundation of their relationship. This relationship was non-conventional by any standard business practice absent the conventions of formal contracts, accounting and record keeping as it was directed only by verbal agreements and emails. Over the next seven months while they negotiated the terms of a formal partnership, Louie Hayward delivered both investment capital and began leading production in the POLYLAST Coleman, TX facility while doing what he could to assist with billing and collections to help Peter Laurence manage constrained cash flows during his ailing health going into 2024.

Peter Laurence met David Soto (a/k/a unnamed Plaintiff) in 2021 who presented himself as interested investor/ acquirer for POLYLAST SYSTEMS LLC. In 2024, while Pete Laurence was ill and negotiating with Louis Hayward, David Soto re-approached Pete

Laurence and proceeded to negotiate terms to acquire POLYLAST SYSTEMS LLC while Louie Hayward continued to work with Pete Laurence as previously described.

It is the assertion of Amicus David Laurence that David Soto who is operating under cloak as the Plaintiff in this lawsuit proceeded with the intent to deceive and perpetuate elder fraud in order to steal POLYLAST SYSTEMS LLC and simultaneously bring a fraudulent lawsuit against Hayward Bros, Inc.

Otherwise stated, it is the contention of Amicus David Laurence that POLYLAST SYSTEMS LLC is currently titled to the Peter Laurence Living Trust dated August 16th 2005 and David Soto has no authority to bring suit as any authenticated contract executed (if any) was breached by absence of any consideration.  Furthermore, the Polylast Patents that are the subject of this suit were unlawfully acquired and fraudulently conveyed to King Coast LLC. who is not a party to this suit.

## ARGUMENT

David Soto (a/k/a Tayor Lemick's "client", a/k/a "Unnamed Plaintiff") does not have any cause of action or authority to bring any lawsuit or claim in the name of POLYLAST SYSTEMS LLC. or Polylast Premier LLC as he is 1) neither an Officer nor Member of POLYLAST SYSTEMS LLC 2)  he does not legally posses any Membership Interests or voting rights and 3) he does not legally hold title to any of the assets or intellectual property of POLYLAST SYSTEMS LLC or Polylast Premier LLC.

Absent any legitimate evidence to the contrary, Amicus David Laurence respectfully believes the court should dismiss this case with prejudice based on the absence of any standing by the Plaintiff.  In addition, as remedy to Amicus David Laurence, any and all contracts and transfer of Patents should be rescinded and deemed void ab initio.

Amicus David Laurence believes it is imperative for the United States Northern  District of Texas to have full awareness of the following:

1) <u>Any purported Purchase Agreement for POLYLAST SYSTEMS LLC by Freshek LLC or any other entity should be deemed null and void.</u> A valid, executed and countersigned Purchase Agreement for POLYLAST SYSTEMS LLC is not in the possession of any records by the (then) Statutory Agent of POLYLAST SYTEMS LLC (Darrell Davis of Clark Hill PLC), the Estate of Peter Laurence or the PETER LAURENCE LIVING TRUST (including its Estate Attorney and Trust Protector)  (i)  Multiple electronic draft versions (none physical) were held by Peter Laurence but none of these were countersigned (ii) Multiple iterations of these draft agreements stipulated the pending sale would include multiple forms of consideration including a certificate granting 10% of non-voting membership interests back to Peter Laurence, a monthly consulting agreement and

commissions on future sales. In the case that David Soto or Taylor Lemick produce a purchase agreement it should be deemed invalid or rescinded based on David Soto / Taylor Lemick terminating any agreement along with obligations including all consideration per #2 below.

2) **No consideration on any Sale / Purchase Agreement for POLYLAST SYSTEMS LLC** Peter Laurence never received any Consideration including cash at close, Certificate of non-voting Membership Interests Grant, fees for ongoing Consulting Agreement, commissions or distributions. In fact, Taylor Lemick sent Pete Laurence a "Notice of Breach of the Membership Interest Purchase Agreement, Notice of Breach of the Transition Consulting Services Agreement, and Immediate Termination of the Transition Consulting Services Agreement" dated October 7th, 2024 (only 26 days after the purported sale and attached herein as Exhibit 1.0). As a result of this, Pete Laurence and his attorney (Darryl Davis of ClarkHill PLC) were in the process of drafting a lawsuit against David Soto and Taylor Lemick for elder abuse and stealing his company just before he died.

3) **No public registration of ownership and no assumption or service of liabilities** (including the approved bankruptcy plan) which subjects POLYLAST SYSTEMS LLC to immediate Involuntary Bankruptcy proceedings. It should be known that both the Arizona Secretary of State and Arizona Corporation Commission both still report that Peter Laurence and the Peter Laurence Living Trust are still the only recorded Member of POLYLAST SYSTEMS LLC. Neither David Soto or Taylor Lemick have claimed membership or registered themselves as the Statutory Agent for POLYLAST SYSTEMS LLC for over fourteen (14) months.

## CONCLUSION

Amicus David Laurence believes the above facts and circumstances warrant both the dismissal of this case with prejudice and the judicial rescission of any purported / executory Purchase Agreement between David Soto (or any of his companies) along with the return of all assets including but not limited to the Patents, equipment, website of POLYLAST SYTEMS LLC.

David Soto and Taylor Lemick have misrepresented and conspired to steal POLYLAST SYSTEMS LLC and subsequently extort the defendants in this case.

Amicus David Laurence has spent thirty (30) years dealing with mergers and acquisitions as a certified examiner, corporate and commercial finance leader and bank executive for some of the largest financial institutions in the world. This experience compels the sharing of these additional observations that speak directly to the credibility and character of

**David Soto and Taylor Lemick as they conspire to mis-represent, conceal, deceive and deflect:**

1) Taylor Lemick has coerced Pete Laurence, Louie and Deb Hayward, Ashton Burke, Polylast Vendors and Employees. Lemick is <u>on record personally</u> as the General Council for POLYLAST SYSTEMS LLC and Polylast Global LLC while she is simultaneously the Attorney of Record <u>under her law firm Lemick Law LTD</u> representing POLYLAST SYSTEMS LLC as the Plaintiff. This combined with fact she has been funding operations (payroll) from her personal bank account (we have documented bank record of this) and rumors around Colman, TX that Lemick and Soto are a couple make her representation ripe for a conflict of interest, adverse interest, self-dealing and/or the imputation of conflict.

2) On August 5th 2024 and August 15th, 2024, prior to the purported September 1, 2024 purchase of POLYLAST SYSTEMS LLC, Taylor Lemick sent notices and demands to Louis Hayward knowingly and falsely identifying herself as the attorney of record for her client POLYLAST SYSTEMS LLC. This documented and falsified misrepresentation stating she was representing POLYLAST SYSTEMS LLC while also representing the the buyer (David Soto) prior to any purchase is a fraud and quite simply legal malpractice as governed by state law and the bar's professional rules of conduct (conflict of interest).

3) David Soto represents himself to be a highly successful business person while his LinkedIn resume is contrived and dubious. His currently named businesses of "Azelera" and "Asturia Ventures" both claim to be private equity / investment offices for which there is seemingly no valid public fingerprint (ie. Pitchbook, public filings, websites, noted investments, officers etc.). David Soto also filed Chapter 7 bankruptcy in 2018. In October 2019 David Soto was the President of Celexus, Inc. (OTC CXUS) which was delisted by the SEC citing "the public interest and the protection of investors require the suspension of trading".

4) Although he (and Taylor Lemick) claim to have authority to sue under POLYLAST SYSTEMS LLC, they have yet to file either of themselves as a Member or Statutory Agent for POLYLAST SYSTEMS LLC fourteen (14) months after the purported acquisition. Instead, they have been operating an alias company under the name "Polylast Global LLC" to avert assuming any of the liabilities (and I assume taxes) for POLYLAST SYSTEMS LLC. This Polylast Global LLC is controlled by <u>Freshtek LLC</u> whose Managing Member is <u>King Coast Inc.</u> All three of these entities are controlled by David Soto and are suspect absent any true business operations or purpose beyond scrambling the assets of POLYLAST SYSTEMS LLC.

5) On October 8th, 2024 (38 days after the purported sale), Taylor Lemick contacted Allan NewDelman who is the bankruptcy attorney for POLYLAST SYSTEMS LLC,

fraudulently stating she was "reaching out on behalf of her client who was interested in purchasing POLYLAST SYSTEMS LLC." As documented by Mr. NewDelman, Taylor was informed of the significant bankruptcy liabilities still outstanding and his outstanding fees. Even though they purportedly owned POLYLAST SYSTEMS as of September 1, 2024, (38 days prior to this call) he never heard back and no payments have been made which subjects POLYLAST SYSTEMS LLC to immediate Involuntary Bankruptcy proceedings.

6) The Patents subject to this litigation were not registered with the USPTO until January 5th, 2025 although Pete Laurence's questionable signature was executed over four (4) months prior on September 1st 2024. The question of signature / document authenticity (mashing/falsification of documents) must be addressed. Additionally, outside the terms of drafted purchase agreement, the Patents were fraudulently conveyed to an unaffiliated company "King Coast Inc." which is a Wyoming based entity that has no business operations but does have the benefit of discreet ownership with its Wyoming registration. This suspect action furthers the underpinning of elder fraud / intent to deceive.

7) On August 23, 2024, Taylor Lemick filed a statement of incorporation taking the name Hayward Bros,Inc. as Louie Hayward had let his registration fee lapse in California. Aside of this being prior to the purported sale of POLYLAST SYSTEMS LLC, it is indicative of the premeditated tactics to harass prior to the lawsuit since he would not comply with her coercion/ demands. It also begs the question "How/why is Taylor Lemick suing Hayward Bros, Inc. when she just incorporated Hayward Bros, Inc. under her own name?..."

8) Similarly, on October 29, 2024, Taylor Lemick registered the name EQUIFLEX FLOORING LLC. in Texas. Equiflex was a competitor of POLYLAST. The founder of Equiflex died, and the name lapsed due to unpaid franchise tax. Lemick took this name from the widow of the founder without integrity, permission or compensation and POLYLAST SYSTEMS LLC and Polylast Global LLC are currently using the Equiflex tradestlye on both websites. This is a shame.

9) Immediately upon the purported close of the POLYLAST SYSTEMS LLC, Pete Laurence was locked out of his corporate and personal email and the company lead-generation website. This is egregious action is documented with his attorney Darrell Davis and his email was recovered postmortem.

10) Polylast Global LLC is currently under investigation by the US Department of Labor initiated on July 2, 2025 under the charge of not paying employees compensation.

11) On her very own letterhead, Taylor Lemick knowingly and fraudulently mis-represents her own law-firm LEMICK LAW, LTD. as having the named Partners "Elliot Halsey"

and "Stacey Lynch". Both of these attorneys have been contacted and deny being part of her law firm past or present as they are both listed with other firms. Additionally and deceptively, her "office address" of 2460 Dundee Rd <u>Suite 474</u> is a PO Box and not a physical address contrary to the requirements of the Illinois BAR. This intentional address mis-representation is both on her letterhead and the Illinois ARDC.

11) David Soto was under a warrant for arrest and was arrested by the Coleman TX Police on October 17th, 2025 for trespassing.

As noted previously, adherence to the doctrine of "clean hands" by both Taylor Lemick and David Soto should be judiciously assessed.

/s/ <u>David Laurence</u>

<u>as Primary Beneficiary of the PETER LAURENCE LIVING TRUST dated August 15, 2005</u>

David Laurence
3316 E. Vallejo Ct.
Gilbert, AZ 85298

(480) 259-0374
davidjeremylaurence@gmail.com

# LEMICK LAW, LTD.

TAYLOR LEMICK • ELLIOT HALSEY • STACEY LYNCH
2460 DUNDEE ROAD, SUITE 474 • NORTHBROOK, ILLINOIS 60065
847/409-3988 • TLEMICK@LEMICKLAW.COM • LEMICKLAW.COM



October 7, 2024

**SENT VIA EMAIL**

Peter Laurence, as Trustee and individually
The Peter Laurence Living Trust
18891 N 93rd St.
Scottsdale, AZ 85255
Email: goodlife@cox.net

Clark Hill
14850 N Scottsdale Rd., Suite 500
Scottsdale, AZ 85254
Attn: Darrell Davis, esq.
Email: ddavis@clarkhill.com

Re:   Notice of Breach of the Membership Interest Purchase Agreement, Notice of Breach of the Transition Consulting Services Agreement, and Immediate Termination of the Transition Consulting Services Agreement

Dear Mr. Laurence,

As you know, I represent both Freshtek, LLC and Polylast Systems, LLC in connection with the Membership Interest Purchase Agreement dated September 1, 2024 by and between Peter Laurence, as trustee of the Peter Laurence Living Trust dated August 16, 2005 ("Purchase Agreement") and the Transition Consulting Services Agreement dated September 1, 2024 by and between Polylast Systems, LLC and Peter Laurence, as trustee of the Peter Laurence Living Trust dated August 16, 2005 ("Consulting Agreement", and collectively with Purchase Agreement, the "Agreements") wherein my client purchased 100% of the membership interests in both Polylast Systems, LLC and Polylast Premier, LLC. I am writing to formally respond to your email dated October 4, 2024 and notify you of the following: (i) your numerous material breaches of the Purchase Agreement; (ii) your numerous material breaches of the Consulting Agreement; and (III) the intent to terminate the Consulting Agreement.

My clients are in receipt of your email dated October 4, 2024 which states "This is the payment due notice for the September Transition Contractor Services Agreement." Unfortunately, your email not only contradicts your previous statements, but it has also forced my clients to take the actions outlined herein.

The following sections outline the numerous material breaches of the Agreements. While we have made every effort to include the most significant breaches, this list is not exhaustive. The full scope of your misconduct and failure to fulfill your obligations continues to emerge as our investigation progresses.

**Notice of Breach of the Membership Interest Purchase Agreement**
The following points outline specific breaches that have been identified. Please note that this is not an exhaustive list, as our investigation is ongoing and may reveal additional breaches and misrepresentations.

1. *Failure to Transfer All Company Assets*

Under Section 2.B.vii-viii of the Purchase Agreement, you were obligated to transfer all company assets, both tangible and intangible, at closing. This including domain names, intellectual property, email addresses, contracts, agreements, and equipment, without limitation. However, these critical assets were not transferred to my client. In fact, unauthorized third parties, such as Louie Hayward, Deborah Hayward, and Hayward Bros., retained control over these assets, including the company's website, domain, and emails. My client was locked out of or prevented from obtaining essential operational tools, despite repeated requests for their return.

The value of the company has been significantly diminished as a result of these failures and your inability to safeguard the company property. Louie Hayward, Deborah Cornell, and Hayward Bros. have effectively taken possession and control of a large percentage of the company property, including without limitation, to trade secrets, formulas, client lists, vendor lists, use of Polylast supplier accounts, and a majority of the company's equipment. You also failed to transfer the company's website, domain, and email addresses due to the undisclosed fact that you permitted a third party to steal the company's domain, which your tech advisor alerted you to as early as January of this year and asked that you file the appropriate documents to regain control of the domain, which you never filed. This failure not only lead to this third party's control of the website, domain, and email, but permitted them to forward all incoming leads to their own personal email accounts, effectively circumventing Polylast and stealing its customers.

These failures have significantly impaired my client's ability to continue operating Polylast Systems and constitutes a fundamental breach of the Agreement. These assets were key components of the sale, and without them, the Company's operations are severely compromised.

2. *Failure to Disclose Known Liabilities*
   In Section 4.G of the Purchase Agreement, you warranted that all known liabilities of Polylast Systems and Polylast Premier were disclosed. However, after taking control of the business, my client uncovered several significant liabilities that were not disclosed in Exhibit D of the Agreement. These include, but are not limited to, delinquent payroll and state/federal tax obligations, unresolved warranty claims due to improper installation guidance, and substantial debts to international partners.

   Specifically, we have identified approximately $268,000 owed to a Singaporean group and $42,000 owed to a German entity. Additionally, numerous parties have reported warranty issues that have not been resolved, stemming from your failure to disclose faulty product guidance or correct product installation procedures. The extent of these liabilities was not disclosed during negotiations or included in the Agreement's exhibits, which misled my client into overvaluing the company and assuming more financial risk than anticipated.

3. *Non-Disclosure of Ongoing or Potential Litigation*
   The Purchase Agreement, under Section 4.G and Exhibit C, required full disclosure of all known and pending litigation. However, we have discovered multiple claims and legal disputes that were not disclosed, including those related to intellectual property, product warranties, and previous supplier agreements. This failure to disclose known litigation significantly impacts Polylast's legal standing and exposes my client to unanticipated financial risk.

   Moreover, your failure to disclose that you defaulted on prior bankruptcy orders has left my client vulnerable to ongoing litigation threats. These omissions represent a direct violation of the warranties in the Purchase Agreement, undermining my client's ability to protect the company's interests.

4. *Fraudulent Misrepresentations of Company Property*
   Under Section 4.I and Exhibit E, you warranted that all company assets—intellectual property, tangible assets, financial accounts, and others—were disclosed and transferred at Closing. It has come to our attention that several key assets were either not disclosed or misrepresented. For example, critical intellectual property, including patents and product formulas, were represented as being fully owned and controlled by Polylast, yet have been discovered to be either expired due to your failure to maintain them or held by third parties.

   Furthermore, you failed to disclose permissions you granted to Louie Hayward, Deborah Cornell, Hayward Bros, Equiflex, and others which undermines your prior statements that these parties were operating without your authorization and wrongfully infringing on Polylast's intellectual property.

2

Additionally, certain assets essential to day-to-day operations, both tangible and intangible, were either withheld, never properly transferred, or wrongfully in possession of third parties, further exacerbating operational challenges. These misrepresentations are material breaches of the Purchase Agreement, as the value of Polylast was significantly overstated without having possession and control of the company property.

5. *Fraudulent Misrepresentations and Fraudulent Inducement*

Pursuant to Section 4.K, you were obligated to make truthful representations regarding the business and its operations. However, it has become clear that many of your representations—particularly those concerning the company's intellectual property portfolio and relationships with suppliers and dealers—were false. Specifically, you misrepresented the status of Polylast's trademarks and the scope of the company's intellectual property rights. My client relied on these representations when entering into the Purchase Agreement, and their inaccuracy constitutes fraudulent inducement.

You further misrepresented the company's relationship and dealings with various third parties. Your assertions that various parties infringed on Polylast's intellectual property and circumvented you in business dealings are contradicted by internal communications. This constitutes a clear misrepresentation that my client relied upon when entering into the Agreement.

These misrepresentations were material to my client's decision to purchase Polylast Systems and have severely impaired its operations and future prospects. The failure to truthfully represent the intellectual property and supplier relationships has devalued the company and created numerous operational obstacles that my client is now forced to address.

6. *Failure to Disclose Known Liabilities*

In addition to the undisclosed liabilities outlined above, additional liabilities that you failed to disclose include: (i) the fact that you are in default of your bankruptcy order; (ii) the UCC filing against all company property; (iii) product failings and expected substantial warranty claims resulting from your decision to supply installers with less glue than was required for proper install; (iv) your previous refusals to cover multiple repairs that should have fallen under warranty; (v) delinquent and unfiled Texas franchise filings and fees; (vi) failing to inform my client that there was "suspect" accounting; and (vii) failing to disclose settlement agreements which permit third parties to infringe on the company's intellectual property. Your knowledge of these liabilities has been confirmed through examination of company files. The investigation into undisclosed liabilities continues. The failure to disclose these liabilities is a direct breach of the Agreement.

7. *Fraudulent Representation of Seller's Role and Knowledge*

Iin Section 4.C, you represented yourself as possessing the primary knowledge of the Company's proprietary formulas and patents. It has since been determined that this knowledge is held by third parties. This misrepresentation is not only a breach of the Agreement but also constitutes fraud, as my client relied on these representations to assess the value and operational capacity of the Company.

**Notice of Breach of the Transition Consulting Services Agreement**

The following points outline specific breaches that have been identified. I have tried to not be repetitive of the breaches outlines above; however, numerous points are applicable to both Agreements. In furtherance of that effort, I have attempted to repeat the breaches outlined above. Please note that this is not an exhaustive list, as our investigation is ongoing and may reveal additional breaches and misrepresentations.

1. *Failure and refusal to provide contracted services*

As outlined in Section 1.01 of the Consulting Agreement, you were obligated to provide essential transition services to ensure the smooth operation of Polylast Systems, including assisting with product development, intellectual property management, and knowledge transfer. Despite this, you have repeatedly refused or failed to provide these services, instead withholding crucial information that is necessary for my client to effectively manage and grow the business.

For instance, when asked for the dealer agreements, you claimed "If David doesn't have them, then they don't exist." You further emphasized this misplaced belief by stating that if you had lost a diamond that you previously owned, then it didn't exist. This is a troubling and completely incorrect statement. The dealer

3

agreements, along with many other company records that you failed to maintain and protect, exist whether or not you have them in your possession. Such responses demonstrate a clear failure to provide the services that were contracted. Your refusal to cooperate in providing critical records such as patent files, litigation files, and customer data has severely hindered my client's ability to run the company.

2. *Failure to Transfer Knowledge and Return Company Property*
A critical component of the Consulting Agreement under Section 1.01 was the transfer of knowledge regarding ongoing product development initiatives and other key operational aspects. Your refusal to provide this knowledge, along with critical operational records, has directly breached this section of the Agreement. Without the knowledge transfer that was promised, my client has been left without the tools and information needed to manage product development and protect the company's intellectual property.

This is further compounded by your repeated failure and refusal to return company property. To date, you have failed to return numerous critical assets, including intellectual property documentation, financial records, and agreements. You further failed to provide crucial login credentials, including without limitation to, domain logins, email logins, financial account logins, and more. This is a direct violation of your obligation to assist with the knowledge transfer.  You also failed to protect company property, other than already mentioned herein. This includes the failure to maintain ownership of social media accounts. We are still unable to gain access accounts and have now been forced to start recovery processes with the social media companies.

3. *Fraudulent Inducement and Fraudulent Misrepresentation*
When entering into the Agreements with you, my client relied upon numerous statements you made, only to find out that every single one of them was untrue. You have repeatedly made the following fraudulent inducements and fraudulent misrepresentations, intending that my client rely upon those misrepresentations and enter into the Agreements:

   (a) You stated on multiple occasions that you were the mind behind Polylast, inventing the products yourself and possessing all the knowledge necessary to make the products and operate successfully. This is not true. In fact, there are several third parties that you have had to point us to because you who actually possess the company know-how, including the scientist who created the formulas the company uses.

   (b) You stated that you were unaware of any companies, other than Hayward Bros., that are actively infringing on the Company's IP. This is also untrue. In fact, after reviewing company records, it is obvious that you knew of multiple parties that have both infringed in the past and continue to infringe today. This is a complete misrepresentation.

4. *Refusing to Properly Assist with Company Operations*
Besides failing and/or refusing to return company property, you have effectively refused to assist with company operations. You have (i) withheld login credentials that are necessary for operations; (ii) withheld contact information, (iii) interfered with management and operations by contacting parties and disclosing confidential company information; (iv) and various other refusals cited throughout this letter.

**Suspension of Contractor Payments In Light Of Good-Faith Dispute**
You were notified on several occasions of the existence of my client's good-faith dispute, as described herein. Per Section 3.02 of the Consulting Agreement, non-payment by Buyer for Services provided by the Seller, which are the subject of a good-faith dispute are not considered a breach of the Agreement. All payments were rightfully suspended until you provided us with all requested materials.

**Immediate Termination the Contractor Agreement per Section 3.01(b)**
As outlined herein, there are numerous material breaches, some of which are incurable and all of which have severely compromised Polylast's ability to function. My client is exercising its right under Section 3.01(b) to immediately terminate the Agreement without notice.

Despite your numerous breaches and fraudulent acts, my client was willing to work with you to obtain the missing, lost, and stolen materials and items that were requested. When notified of these issues, you even went so far as to state "I don't care if I get paid at all," and agreed to assist Polylast. Unfortunately, instead of assisting with my

client's efforts to safeguard the company's assets, you have instead continuously failed to comply with the terms of the Agreements. After receipt of your letter dated October 4, 2024, it is clear that my client's efforts were made to no avail. If nothing else, you made your intentions clear: you expect to receive contractor payments without providing any of the requested services. This is not only unacceptable, but extremely fraudulent.

**Continued Investigation**
Please be advised that my clients' investigation into the full extent of your breaches and misrepresentations is ongoing. As additional facts come to light, it is becoming increasingly clear that the scope of your misconduct may be even broader than initially believed. As my clients continues to uncover evidence of further breaches, additional legal action may be pursued to address these matters. We reserve the right to amend this notice or take further action as necessary based on new findings. Rest assured, all violations of the Agreements will be addressed in full, and we will take every step necessary to protect my clients' interests.

**Demand for Cooperation and Return of Company Property**
Polylast hereby demands that you immediately return all Company property in your possession. If said property is not in your possession, then Polylast demands that you immediately retrieve said property and return it to Polylast, the rightful owner of the company property.

Failure to comply with this request will be considered a further breach of the Agreements and may result in immediate legal action, including but not limited to filing for injunctive relief and seeking damages for breach of contract, fraudulent inducement, and fraudulent misrepresentation.

We further demand that all Polylast financial accounts/records and legal client files be immediately surrendered to my clients. This includes all bank accounts, credit card accounts, financial accounts that accepted Polylast funds or paid expenses on behalf of Polylast, Polylast's client file with Clark Hill, Noblitt, and any other law firm which represented Polylast at any point since its inception. We also demand that all Polylast content, files, documents, images, videos, etc. stored on your cell phone, computer, cloud, external storage devices, and physically stored in your home or at any other tangible or intangible location, be immediately returned to Polylast. It is not within your rights to retain any company property and further retention of company will be considered intention conversion and/or theft.

**Confidentiality and Non-Interference**
In light of these circumstances, you are hereby reminded and requested to maintain strict confidentiality regarding all information relating to Polylast and its operations. You are not authorized to make any public or private statements that may disparage the reputation of Polylast Systems, its owners, partners, or employees. Furthermore, you are instructed to immediately cease any direct or indirect contact with Polylast's clients, vendors, employees, contractors, members, landlords, suppliers, vendors, customers, distributors, installers, dealers, or any other person or entity associated with Polylast, either past or present. Any attempt to interfere with Polylast's business relationships or operations will be treated as intentional and harmful interference, and we reserve the right to pursue further legal action should any such contact be discovered.

To determine the total amount of delinquent taxes owed by the company, we require that you (1) provide us with the log in credentials for the company's IRS business tax account, and (2) complete the attached IRS Form 4506-T and return it to us immediately.

Should you have any questions or wish to discuss this matter further, I am available via email at tlemick@lemicklaw.com or by phone at (847) 409-3988.

Sincerely,

*Taylor Lemick*

Taylor Lemick
Managing Partner

5



David Lowman
326 E Vallejo Ct.
Gilbert, AZ 85298
480-259-0074

Attn: Judge James Wesley Hendrix
US District Court, San Angelo Div.
1205 Texas Ave, Room 220
Lubbock, TX 79401-4091
Phone: 806-318-7320




