# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### SAN ANGELO DIVISION

| | |
|---|---|
| **POLYLAST SYSTEMS, LLC** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 6:25-CV-040-H** |
| **HAYWARD BROS INC., LOUIE HAYWARD aka LOUIS HAYWARD, DEBORAH CORNELL aka DEBORAH HAYWARD, CAMELLIA BOUTIQUE, LLC, and ASHTIN BURKEY** | |
| **Defendants.** | |

## PLAINTIFF'S MOTION TO STRIKE AND RESPONSE IN OPPOSITION TO THE PURPORTED AMICUS BRIEF ON NON-PARTY DAVID LAURENCE

Plaintiff Polylast Systems, LLC ("Polylast"), by and through undersigned counsel, respectfully moves to strike the submission filed by non-party David Laurence ("Laurence") purporting to be an "amicus" brief and, to the extent it is construed as a motion for leave, opposes any request for leave to file it.

Laurence's filing is procedurally improper, violates this Court's prior Order, presents no proper amicus interest, and consists largely of inadmissible hearsay and scandalous, false accusations aimed at Plaintiff and its counsel. It should be rejected in its entirety.

### I. Introduction

Polylast files this motion and response to protect both the integrity of these proceedings and its right to have its claims adjudicated on the merits, rather than on a barrage of extra-record accusations from a non-party with no authority to speak for the relevant entities.

On November 17, 2025 (Dkt. No. 81), the Court denied Laurence's earlier request to participate, and instructed that if he wished to be heard, he must file a separate motion for leave together with any proposed amicus brief and explain his specific interest in the outcome of this litigation. Instead of following that directive, Laurence simply caused a lengthy brief to be filed on the docket—without a motion for leave (despite the title of the inflammatory filing), without complying with the Local Rules, and without satisfying any of the standards governing amicus participation. Simply titling the document "Motion for Leave" does not equal compliance.

Laurence's filing is defective in three independent ways:

1.    *Procedurally improper*. It disregards the Court's express Order and Local Civil Rule 7.2(b) by presenting argument and purported "evidence" from a non-party with no motion for leave and no showing that his participation would aid the Court.

2.    *Substantively improper*. Laurence, by his own repeated admissions, is not a trustee, executor, or representative of the Peter Laurence Living Trust. He is, at most, a beneficiary. He has no authority to litigate trust issues, no role in Polylast's operations, and no personal knowledge of the transactions and events he purports to describe. His filing attempts to re-litigate internal ownership questions (though none actually exist) that only a duly authorized fiduciary could raise, and that are outside the scope of any issue currently before the Court. Laurence's filing further confirms that he seeks not to assist the Court, but to litigate a private ownership dispute he has no authority to bring. His accusations concern the internal affairs of the Peter Laurence Living Trust and Polylast—matters that can only be raised by a duly appointed trustee or personal representative. A beneficiary has no standing under Texas or Arizona law to assert or contest contractual rights on behalf of a trust or estate. Laurence's lack of authority is

2

fatal to any purported interest in this litigation and underscores why he cannot serve as an amicus.

           3.    *Scandalous and prejudicial.* The submission is permeated with inflammatory and patently false accusations directed not only at Polylast's counsel, but also Polylast's principal, David Soto. Laurence levels unfounded claims about alleged personal relationships based on "rumors," makes baseless assertions of "fraud" and "coercion," and even references unrelated personal matters having nothing to do with this litigation. None of these accusations have any connection to standing, capacity, ownership, or the merits of Polylast's claims. They serve only to harass, distract from Defendants' own conduct, and improperly prejudice the Court against Polylast by attacking its counsel and its principal through insinuation, innuendo, and personal smears – exactly the type of scandalous material that Rule 12(f) is designed to exclude. Such gender-based and personal attacks – aimed at discrediting Plaintiff through its representatives – have no place in federal litigation and provide an additional and independent reason to strike the filing. Plaintiff will not dignify these unrelated accusations with point-by-point rebuttal. They are improper, immaterial to any issue before the Court, and do not warrant further discussion.

      None of these defects can be cured by amendment or later briefing, and none justify granting Laurence leave to participate in any capacity.

      Federal courts do not permit non-parties to bypass the rules, inject hearsay and speculation into the record under the label of "amicus," or use that vehicle to smear the Plaintiff's representatives or counsel. Laurence's submission is not a neutral amicus brief – it is an attempted back-channel attack on Polylast, its principal, and its counsel. Under Rule 12(f) and the Court's inherent authority to manage its docket and protect the integrity of proceedings, the

filing should be stricken in its entirety. At a minimum, the Court should deny any leave for Laurence to participate and expressly disregard the scandalous accusations concerning both Plaintiff's counsel and Mr. Soto.

Furthermore, Defendants' response to Plaintiff's Local Rule 7.1 inquiry further underscores the impropriety of Laurence's filing. Rather than provide the required Rule 7.1 position on whether the motion is opposed, Defendants' counsel stated only that they were "not opposed to the Amicus insofar as it seeks clarity," adopting Laurence's accusations while still declining to take a position on the relief actually requested. Counsel then attempted to obtain documents outside any authorized discovery process. A Rule 7.1 conference is limited solely to determining whether a motion is opposed; it is not a mechanism for requesting or compelling production of documents, and the Local Rules do not permit parties to convert the conferral requirement into an informal discovery demand. Defendants' attempt to leverage an unauthorized non-party filing as a platform for extra-record accusations and backdoor discovery is consistent with the coordinated nature of Laurence's submission and mirrors Defendants' prior efforts to place similar allegations before the Court. The Local Rules do not permit a non-party filing—or the Rule 7.1 conference itself—to be used for such tactics.

No reasonable counsel would be "not opposed" to the substance of Laurence's filing if acting independently and in good faith adherence to the Federal Rules. The submission is so plainly outside what is permitted in an amicus brief—containing scandalous accusations, extra-record factual assertions, personal attacks, and matters wholly irrelevant to the Court's inquiry—that Defendants' expression of support for its "clarity" only underscores the extent to which the filing aligns with their own prior attempt to inject similar material into the record. The

impropriety of the brief speaks for itself, and Defendants' reaction to it further highlights why it should not remain on the docket.

Additionally, Laurence's filing is procedurally improper for multiple, independent reasons. First, it constitutes an improper ex parte communication: Laurence caused the document to be mailed directly to chambers and placed on the docket without authorization, in violation of Local Civil Rule 5.1(d) and the fundamental prohibition on ex parte submissions to the Court. Second, the filing disregards the Court's November 17 Order (Dkt. No. 81) requiring a separate motion for leave and violates Local Civil Rule 7.2(b), which mandates that non-parties obtain leave before filing. Third, the submission violates Rule 11 because it contains factual allegations and accusations with no evidentiary basis whatsoever and indeed contradicts the record. Fourth, the filing fails every standard governing amicus participation in the Fifth Circuit: Laurence is not neutral, the brief does not assist the Court, and it improperly seeks to litigate factual disputes rather than offer legal insight. Fifth, an amicus brief may not introduce evidence, yet Laurence's submission is composed almost entirely of extra-record allegations, hearsay, and purported factual assertions. Sixth, the filing attempts to litigate trust and estate issues that only a duly appointed trustee or personal representative could raise, rendering the entire submission jurisdictionally improper. Any one of these defects warrants striking the filing; together they compel it.

Courts routinely strike filings that, like this one, are procedurally improper, factually unsupported, and drafted for no purpose other than to publicly attack a party or counsel. See Fed. R. Civ. P. 12(f) (court may strike any "redundant, immaterial, impertinent, or scandalous matter").

Polylast addresses these issues reluctantly, only because Laurence's filing contains extraordinary and inappropriate allegations that, if left unanswered, could prejudice the Court's view of the parties and counsel.

## II. LEAVE TO FILE SHOULD BE DENIED BECAUSE LAURENCE'S SUBMISSION DOES NOT SATISFY ANY STANDARD FOR AMICUS PARTICIPATION

Even if the Court were inclined to construe Laurence's submission as a request for leave—despite the absence of any motion—the filing would still fail because it does not come close to satisfying the standards governing amicus participation in the Fifth Circuit. Amicus status is reserved for neutral entities that seek to aid the Court by offering legal analysis on matters of broad significance. The Fifth Circuit permits amicus briefs only where the proposed amicus is neutral, where the submission is timely, and where the filing will aid the Court by providing legal analysis beyond what the parties supply. Laurence meets none of these requirements.

To begin with, Laurence is not a neutral party. He is a self-interested individual who believes he stands to gain financially by attacking Polylast's ownership, undermining its management, and inserting himself into matters he has no legal authority to address. Courts consistently reject amicus participation where, as here, the filer is effectively an adverse litigant attempting to circumvent the procedural and evidentiary requirements that bind actual parties. Laurence's submission is adversarial in every respect and is motivated by private disputes concerning the Peter Laurence Living Trust—not by any broader legal interest that could assist the Court.

6

Nor could Laurence's submission provide any assistance to the Court. A proper amicus brief offers legal insight or addresses an issue of public importance. Laurence's filing contains neither. It presents no legal argument, no citation to controlling authority, and no analysis concerning the questions currently before the Court. Instead, it is composed almost entirely of unsworn factual assertions, speculation, hearsay, accusations, and personal attacks—precisely the type of extra-record material that an amicus may not introduce. The Fifth Circuit makes clear that an amicus brief cannot serve as a vehicle to expand the factual record or present evidence, and Laurence's submission violates that rule at every turn.

Additionally, courts routinely deny amicus participation when the filer is, in substance, an adverse litigant attempting to influence the outcome of a private dispute. Laurence is precisely that. By his own admission, he is a beneficiary who believes he stands to gain financially from disrupting Polylast's operations and challenging its ownership. His submission reads not as an amicus brief, but as an adversarial pleading reflecting his personal grievances, conjecture, and disputes with Polylast, its principal, and its counsel. Such an individual cannot qualify as an amicus under any recognized standard.

Moreover, Laurence lacks any legally cognizable interest that could justify amicus participation. Local Civil Rule 7.2(b) requires a movant to identify a specific and legally cognizable interest in the litigation. Laurence has none. By his own repeated admissions, he is merely a beneficiary of the Peter Laurence Living Trust. Under the laws of Texas and Arizona, a beneficiary lacks standing to assert contractual rights of a trust, challenge transactions involving trust property, or litigate on behalf of a trust or estate. Only a duly appointed trustee or personal representative may do so. Laurence's attempt to use an amicus brief to litigate internal trust and

7

corporate affairs—matters he is legally prohibited from raising in any posture—renders his submission improper as a matter of law.

In the Fifth Circuit, an amicus brief may not introduce evidence or otherwise expand the factual record. Laurence's filing flagrantly violates this principle. The document attempts to present a competing factual narrative regarding Polylast's internal affairs, the Peter Laurence Living Trust, and confidential business communications, none of which are properly before the Court, and all of which would be inadmissible even if presented by a party. Because an amicus may not serve as a vehicle for introducing evidence, Laurence's filing is impermissible as a matter of law.

Granting leave for a filing of this nature would also undermine Rule 11 and the orderly administration of justice. Laurence's submission consists of allegations he could never certify under Rule 11 and that no party has the ability to test through discovery. Allowing a non-party to circumvent the rules by mailing materials to chambers and filing hearsay-laden accusations through an "amicus" label would invite precisely the type of disruption and abuse that Rule 11 and the Local Rules are designed to prevent. Courts decline to permit such filings for this reason alone.

Finally, even if an amicus could introduce factual narratives—which it cannot—the factual assertions Laurence presents are not germane to any issue pending before the Court. The Court directed the parties to address specific jurisdictional and capacity-related questions. Laurence's filing instead attempts to relitigate internal trust affairs, collateral business disputes, and personal grievances. A filing of that nature not only fails to assist the Court, but actively threatens to confuse and prejudice the proceedings.

For these reasons, Laurence's submission cannot qualify as a proper amicus brief under any recognized standard. It is adversarial, argumentative, evidentiary, and motivated by private disputes in which he lacks legal standing. Allowing such a filing would undermine the Court's prior Order, the Local Rules, and the purpose of amicus participation. Leave should therefore be denied.

### III. LAURENCE'S FACTUAL ASSERTIONS ARE FALSE, EXTRA-RECORD, AND LEGALLY IRRELEVANT

#### A. Overview of Laurence's Unsupported and Incorrect Factual Assertions

Laurence's submission rests on a series of factual claims that are inaccurate, incomplete, based on assumptions that bear no relationship to how Polylast actually operated or how the acquisition occurred, or are intentionally fabricated to support a position that doesn't actually exist. His assertions regarding ownership fundamentally misunderstand both LLC law and the contractual transfer that took place. Polylast Systems, LLC's membership interests were transferred pursuant to a fully executed Membership Interest Purchase Agreement signed by Peter Laurence during his lifetime. Under Texas and Arizona law, ownership of an LLC turns on the contract—not on public-facing secretary of state records. Neither Mr. Soto nor FreshTek is required to appear on a secretary of state website for the transfer to be valid.

Laurence also lacks any authority to raise the issues he asserts. He is not a trustee, personal representative, or fiduciary of the Peter Laurence Living Trust; if anything, he is a beneficiary who shares interest with his sister. A beneficiary cannot litigate on behalf of a trust or challenge transactions the trustee executed. The individual with actual authority— successor trustee Paul Finch —was directly involved in advising Peter Laurence during the acquisition,

including reviewing drafts, providing feedback, and negotiating deal terms. Paul Finch's absence from Laurence's filing, and the fact that Paul Finch has raised no issue with the transaction despite having first-hand knowledge of it, underscores the lack of credibility in Laurence's assertions.

Many of Laurence's statements concerning Polylast's corporate history are also incorrect. Polylast did not "cease operations," nor was it "recreated." When the manufacturing facility relocated to Texas in 2020 (not 2021 as Laurence claims), Randy Neighbors acquired a 50% interest while simultaneously leasing and later purchasing a new building for Polylast operations, relocating the equipment, and keeping the business functioning during a period when Peter Laurence stated he was in severe financial distress. He and his team then ran Polylast's manufacturing for years, ensuring continuous production and continuity of business. Operations did not stop, and the notion that Polylast was "shut down" or "concocted" is demonstrably false.

Laurence's depiction of Defendant Louie Hayward as a legitimate investor likewise contradicts the record. Months before his death, Peter Laurence stated that Defendants were "operating without any agreement, therefore violating or potentially violating patents and trademarks," that Defendants had "commandeered over $400,000" in revenue, and that counsel should "deliver a simple demand letter" demanding repayment. These statements came directly from Peter Laurence — the only person with authority at the time—confirming that the demand letters were expressly authorized and that Hayward was engaging in unauthorized and harmful conduct. Peter also discussed pursuing civil and criminal actions against Defendants Louie Hayward and Deborah Cornell for elder abuse, further contradicting Laurence's claims.

Laurence's attempts to mischaracterize counsel's role are equally unfounded. Peter Laurence directed the steps taken, communicated regularly with the new operational team

regarding litigation, sought updates, and provided guidance regarding enforcement efforts. Counsel did not represent Peter Laurence or the Peter Laurence Living Trust in the acquisition. Clark Hill—Polylast's longstanding outside counsel—handled the drafting and review of the transaction materials at Peter Laurence's request, consistent with its ongoing representation of the company. Assertions that counsel "invented" Polylast's position or had improper motives are false and appear aimed at unfairly discrediting Plaintiff's chosen counsel through insinuation and gender-based innuendo.

The filing also includes a series of irrelevant assertions about letterhead formatting, Mr. Soto's unrelated business history, Mr. Soto's past bankruptcy, allegations of "extortion," accusations of falsified signatures, and other matters that have no relevance to Polylast's standing or claims. These statements are not only immaterial—they are demonstrably false and appear designed solely to smear Polylast, its principal, and its counsel. Laurence also misrepresents personal matters without any factual basis, relying openly on "rumors" to support allegations that would never be made against male counsel.

Finally, Laurence's narrative reflects a fundamental lack of knowledge concerning his father's intentions. He was not involved in Peter Laurence's business affairs and did not participate in the communications leading to the acquisition. In contrast, Peter Laurence remained in consistent contact with Mr. Soto from 2021 through 2024. After Hayward sabotaged a separate investor deal, Peter Laurence reached out to Mr. Soto and asked him to acquire the company because, in his own words, Defendants were screwing him over. Peter Laurence's communications confirm his intent and involvement. David Laurence's contrary assertions rest not on fact, but on speculation and the perspective of a beneficiary who had little connection to his father's business activities.

**B. Laurence's Assertions Concerning Ownership, Standing, and the Transaction Are Factually Wrong and Legally Irrelevant**

Even if the Court were to consider Laurence's factual allegations—which it should not—nearly all of them are demonstrably false, based on speculation, or contradicted by the record. More importantly, none of the assertions he makes are relevant to any issue pending before the Court. The Court directed the parties to address legal questions concerning capacity and standing. Laurence's submission instead attempts to introduce an entirely new factual narrative regarding Polylast's internal affairs, the Peter Laurence Living Trust, and personal accusations against Polylast's representatives. These matters have no bearing on the Court's analysis.

First, Laurence offers a sweeping series of claims concerning Polylast's ownership and the status of its membership interests. These assertions are both inaccurate and legally irrelevant. The membership interests in Polylast were transferred pursuant to a fully executed Membership Interest Purchase Agreement signed by Peter Laurence himself—the only individual with authority to bind the Peter Laurence Living Trust. Laurence's speculation about whether his father retained personal copies of transaction documents does not bear on whether those documents existed or were executed; corporate and trust instruments do not vanish because a beneficiary later claims not to have found them. Laurence's implication that Polylast or its principal should somehow be faulted for what trust documents Peter Laurence did or did not personally retain is misplaced; beneficiaries do not control a settlor's record-keeping, and such issues have no bearing on whether executed instruments are legally effective. Laurence's suggestion that the Trust continues to own Polylast is therefore incorrect. Under Texas and Arizona law, a valid transfer executed by the authorized trustee—in this case, Peter Laurence during his lifetime—is binding and cannot be undone after execution by a beneficiary who

12

disagrees with the transaction. Laurence's assertions to the contrary reflect a fundamental misunderstanding of trust law, LLC law, and the relevant facts.

Likewise, his suggestion that "Polylast Global, LLC" is some sort of alias or sham mischaracterizes a duly registered affiliate authorized to operate in Texas. It is common and entirely lawful for businesses to hold intellectual property or operations in multiple related entities.

To the extent Laurence relies on termination of a separate consulting agreement, that termination did not rescind or void the Membership Interest Purchase Agreement. Under basic contract principles, termination of one contract does not undo a fully executed, separate sale agreement.

**C. Laurence's Assertions About the Acquisition and Communications With Peter Laurence Are Contradicted By the Record**

Second, Laurence's accusations concerning the circumstances surrounding the acquisition are contradicted directly by Peter Laurence's own contemporaneous communications. In the months preceding his death, Peter Laurence communicated repeatedly about (1) his desire to move forward with the transaction, (2) the need to address ongoing misconduct by Defendants, and (3) the fact that he had already reviewed transaction documents.

For example, Peter Laurence wrote that Defendants were "operating without any agreement, therefore violating or potentially violating patents and trademarks," and that Defendants had "commandeered over $400,000" in unauthorized sales in only a few months, and "To get a rough idea, just ask Louie [Hayward] how much money he has received from the sales to [C]razy Mountain golf, Innovative Sports Surfacing" and Polylast Dealers. He further stated

that Defendants have "absolutely no right to do what [they] are doing." He then instructed that an attorney "deliver a simple demand letter" on behalf of Polylast. Peter Laurence repeatedly instructed that formal demand letters be sent to Defendants, praised the letters drafted, and even advised that the bank accounts used to divert Polylast revenue "be attached so they can't pilfer funds." These statements—made by the only person with lawful authority at that time to act on behalf of the Peter Laurence Living Trust —confirm that legal actions were taken at Peter Laurence's express instruction and that the acquisition process was real, deliberate, and ongoing. David Laurence was not involved in these communications, was not consulted by his father, and had no personal knowledge of the events he now attempts to describe.

Peter Laurence's communications also confirm that the acquisition was underway, active, and fully known to him, directly refuting the amicus brief's claim that the transaction was invented or concealed. Peter Laurence reviewed drafts, raised questions, proposed revisions, and openly discussed timing, liabilities, and deal mechanics. These are not the statements of someone unaware of or opposed to the transaction. They are the statements of the only person with lawful authority to execute it. At no point did Peter Laurence reference David Laurence, seek his input, or suggest that any beneficiary had a right to intervene.

Peter Laurence's communications further demonstrate that he supported—not opposed—the litigation against Defendants, routinely forwarding evidence, asking for updates, requesting that litigation against Defendants commence, and strategizing about next steps. He discussed patent issues, customer lists, financial records, and specific individuals whom he believed were aiding Defendants in diverting Polylast's business. Peter Laurence also proposed coordinating with patent counsel and preparing communications to customers and vendors notifying them of Defendants' infringing activities. Peter Laurence even planned to file criminal charges against

14

Defendants Louie Hayward and Deborah Cornell, stating that he had visited his local police station to make a report. These statements are flatly inconsistent with the amicus brief's portrayal of a vulnerable or uninformed individual misled by others. They instead depict an engaged business owner actively working to address ongoing misconduct by Defendants.

Moreover, Peter Laurence himself forwarded to Mr. Soto an August 2024 email in which Defendant Louie Hayward disclosed his own hostility and personal grievances toward Peter Laurence and toward Polylast's new ownership. In that email—sent by Defendant Louie Hayward to a third party, then forwarded to Peter Laurence, who in turn forwarded it to Mr. Soto—Hayward complained that Peter Laurence had "teamed up with Dave [Soto]," confirming that even Hayward understood Peter Laurence was aligned with the incoming management and adverse to Defendants. Defendant Louie Hayward further admitted that he and Defendant Deborah Cornell "just want to carve [Peter Laurence] out of our lives," and further stated that "Pete is not the person we thought he was." Hayward further characterized Peter Laurence as someone who made his own choices and frequently shifted alliances. Peter Laurence's decision to forward this email to Mr. Soto demonstrates that he viewed Defendants' accusations as unfounded and wanted the new ownership to be aware of Defendants' misconduct and personal animus. Far from supporting Laurence's narrative, this contemporaneous communication confirms that Peter Laurence acted independently, trusted Mr. Soto, and actively shared evidence of Defendants' wrongdoing—not that he was coerced or manipulated by anyone associated with Polylast.

The communications also demonstrate that Peter Laurence consciously and repeatedly excluded David Laurence from all business operations. Peter Laurence never consulted him, never referenced him, never copied him, and never suggested that Laurence had any role in

Polylast, the Trust's business decisions, the acquisition, or the legal actions being taken. To the contrary, Peter Laurence made clear that misunderstandings were arising from individuals "not well informed about what the situation really is," and Peter Laurence positioned himself—not David Laurence—as the person with knowledge and authority to clarify those issues. The absence of David Laurence from every operational, legal, financial, or business communication speaks conclusively to his lack of knowledge and his total lack of involvement in the events he now attempts to describe to the Court.

For all these reasons, Laurence's factual assertions are not merely inadmissible and extra-record—they are demonstrably false, contradicted by the only person with first-hand knowledge, and legally irrelevant to any issue before the Court.[1]

Third, Laurence mistakenly suggests that he or the Trust's beneficiaries have authority to challenge Polylast's internal affairs. They do not. A trust beneficiary may not litigate on behalf of a trust, challenge contract rights belonging to the trust, or contest a transaction entered into by a trustee. Only a duly appointed successor trustee may do so, and Laurence is not that person. The Trust instrument identifies successor trustees—none of whom have submitted anything calling the transaction into question, despite having far more knowledge of Peter Laurence's affairs than Laurence, who was estranged from his father for substantial portions of his life and openly acknowledged the lack of contact between them.

**D. Laurence's Accusations Against Polylast's Counsel and Principal Are Improper, Unsupported, and Prejudicial**

---

[1] These communications are referenced solely to show that David Laurence lacks personal knowledge and that his allegations contradict contemporaneous facts. Polylast does not offer them for the truth of the matters asserted and does not waive any privilege or work-product protection.

Fourth, Laurence's attempts to cast aspersions on Polylast's operations, its principal, and its counsel are irrelevant and unfounded. Laurence claims that Polylast was "concocted," that its counsel engaged in "coercion," that Polylast's principal engaged in misconduct, and that various individuals acted improperly in connection with the acquisition. Notably, Laurence identifies no document, email, witness, or other evidence to support any allegation of 'coercion' by anyone – because there is no such evidence. These assertions are factually false, legally irrelevant, and appear intended solely to prejudice and inflame. The record shows that Polylast has operated continuously, that its internal affairs were managed by individuals with authority to do so, and that Peter Laurence—through counsel and trusted advisors—directed both the acquisition process and the legal actions subsequently taken by the company. None of Laurence's accusations relate to Polylast's standing, capacity, or to any element of its claims against Defendants.

### E. Laurence's Additional Accusations Concerning Unrelated Matters Are Immaterial and Inappropriate

Fifth, Laurence's allegations regarding confidential business dealings, tax matters, unrelated litigation, and personal history are wholly improper and outside the scope of this case. An amicus brief is not a mechanism for relitigating decades-old business disputes, injecting personal grievances, or making defamatory accusations about individuals involved in a case. These matters have no bearing on Polylast's standing, its capacity to sue, or the merits of its claims against Defendants.

### F. Laurence's Speculation and Lack of Personal Knowledge Render His Narrative Unreliable

Finally, Laurence's submission repeatedly misstates corporate and trust law, misinterprets documents he has never seen, and speculates regarding internal matters he had no involvement in. His narrative conflicts with the governing legal instruments, the record evidence, and the statements of those actually involved in the company's operations. Because Laurence lacks personal knowledge, lacks authority to speak for any entity relevant to this action, and lacks any legal basis for his factual assertions, his attempted factual narrative is entitled to no weight.

For these reasons, the Court should decline to consider any of Laurence's factual statements. They are unsworn, inadmissible, unsupported, irrelevant, and based on second-hand speculation by a non-party who had no involvement in the events he attempts to recount.

## IV. EVEN IF NOT STRICKEN IN FULL, THE COURT SHOULD DISREGARD ALL SCANDALOUS, IRRELEVANT, AND PREJUDICIAL ALLEGATIONS

Even if the Court were disinclined to strike Laurence's submission in its entirety, the Court should, at minimum, disregard all portions of the filing that contain scandalous, immaterial, or extra-record allegations. Federal courts consistently hold that amicus filings cannot be used to expand the evidentiary record, introduce hearsay, or lodge personal accusations against parties or counsel. See Fed. R. Civ. P. 12(f) (permitting the Court to strike any "redundant, immaterial, impertinent, or scandalous matter").

Laurence's filing is permeated with statements that fall squarely within these prohibited categories. The submission includes: (i) unsworn factual assertions lacking any foundation; (ii) defamatory allegations about Polylast's counsel and its principal; (iii) speculation regarding internal trust affairs outside Laurence's personal knowledge; (iv) arguments based solely on hearsay and rumor; and (v) personal accusations that are wholly irrelevant to any issue pending

before the Court. None of these assertions bear any connection to the jurisdictional or capacity-related questions identified in the Court's November 17 Order.

Because these allegations are not relevant to the Court's analysis, would be inadmissible even if presented by a party, and pose a material risk of unfair prejudice, the Court should expressly disregard them. Federal courts routinely decline to consider material that is (1) outside the record, (2) unsupported by admissible evidence, or (3) designed to inflame rather than inform. Laurence's filing satisfies all three criteria. His assertions therefore warrant no consideration and should be excluded from the Court's review.

Accordingly, even if the Court denies the motion to strike in full, the Court should disregard all factual assertions, accusations, and inflammatory statements contained in Laurence's submission, and consider only the proper legal materials submitted by the actual parties.

## V. THE CONTENT AND CIRCUMSTANCES OF LAURENCE'S FILING STRONGLY SUGGEST IMPROPER COORDINATION WITH DEFENDANTS

The timing, substance, and structure of Laurence's submission – combined with Defendants' immediate reliance on the filing – raise serious concerns that his filing is not an independent "amicus" submission at all, but instead an effort coordinated with or influenced by Defendants or their representatives. Many of the accusations in the proposed brief—including attacks on Polylast's counsel, allegations concerning Polylast's operations, and claims regarding the company's internal affairs—mirror statements previously advanced by Defendants, rely on arguments unique to Defendants' litigation posture, or repeat characterizations that Laurence himself could not possibly have personal knowledge of. Laurence has never been involved in

Polylast's operations, was estranged from his father for years, and has no firsthand familiarity with the events surrounding the acquisition or the enforcement actions Peter Laurence directed.

Nevertheless, his filing contains detailed assertions and narrative claims that reflect information known only to Defendants, including matters raised for the first time in Defendants' prior motions. This extraordinary overlap strongly suggests that Laurence is being used—intentionally or otherwise—as a surrogate to inject into the record the type of inflammatory, speculative, and scandalous allegations that Defendants themselves could not properly present under Rule 11. The use of a non-party beneficiary to advance a party-aligned narrative, outside the bounds of proper procedure, is fundamentally inconsistent with the purpose of amicus participation and appears designed to evade the Court's rules, avoid discovery obligations, and prejudice the record with extra-legal assertions.

If Defendants or their counsel participated in, facilitated, or encouraged the preparation or submission of this filing—directly or indirectly—that conduct would be improper, inconsistent with the Local Rules, and contrary to the Court's Order (Dkt. No. 81) prohibiting unauthorized filings by non-parties. Regardless of the extent of such coordination, the striking alignment between Laurence's brief and Defendants' own arguments further underscores why the filing must be stricken in its entirety.

## VI. LAURENCE HAS INTERFERRED WITH POLYLAST'S LEGAL AFFAIRS AND INDUCED BREACHES OF ATTORNEY-CLIENT DUTIES

Laurence's filing is not merely unauthorized—it is the culmination of a pattern of improper interference with Polylast's legal affairs. By his own descriptions, Laurence has contacted attorneys who represented Polylast Systems, LLC, and he has obtained and attempted

to weaponize information that is protected by attorney–client privilege and corporate fiduciary duties. This conduct is improper for any non-party, but it is particularly inappropriate coming from a trust beneficiary who lacks any authority to act on behalf of the trust or the company.

Under both Texas and Arizona law, attorneys owe duties to the entity they represent—not to its individual members, beneficiaries, or heirs. A trust beneficiary has no right to override the trustee, to direct the trust's lawyers, or to obtain privileged communication concerning trust or corporate affairs. Laurence's repeated attempts to speak with Polylast's former counsel, and his use of those communications to craft accusations against Polylast and its counsel, reflect a fundamental disregard for these principles and threaten the integrity of privileged business communications.

Notably, Laurence admits he has spoken with attorneys who represented Polylast during the acquisition process, previous litigation matters, and during its bankruptcy proceedings. These attorneys are bound by strict duties of confidentiality, which according to Laurence's filing, may have been breached without authorization or consent of Polylast. Any disclosure of privileged information by those attorneys would itself be improper. Laurence's attempt to introduce such communications into a federal proceeding through an unauthorized "amicus" brief is an unacceptable intrusion into privileged matters and yet another reason the Court should not consider his submission.

A litigant cannot circumvent privilege, fiduciary duties, or Rule 11 by recruiting a non-party beneficiary to relay accusations and purported "statements" from attorneys who owed duties only to the company. Laurence's conduct represents precisely the type of improper interference that courts routinely reject, and it further demonstrates why his filing must be stricken.

## VII. THE COURT SHOULD STRIKE LAURENCE'S SUBMISSION UNDER RULE 12(F) AND ITS INHERENT AUTHORITY

Even if Laurence had properly sought leave—which he did not—his submission should be stricken because it is precisely the type of "redundant, immaterial, impertinent, or scandalous matter" that Federal Rule of Civil Procedure 12(f) prohibits. Courts exercise this authority to remove filings that improperly introduce inadmissible facts, contain personal attacks, risk prejudice, or otherwise undermine the dignity and orderly administration of justice. Laurence's submission does all of these.

First, the document is immaterial and impertinent because it addresses issues that have no bearing on any question pending before the Court. The Court directed the parties to address narrow, legal questions concerning Polylast's identity and capacity to sue. Laurence's filing instead attempts to litigate internal trust affairs, collateral business disputes, confidential commercial transactions, and matters concerning individuals who are not parties to this case. None of these topics are relevant to the Court's analysis. Courts regularly strike filings that attempt to divert proceedings into collateral issues, particularly when raised by a non-party.

Second, the submission is scandalous within the meaning of Rule 12(f). Laurence repeatedly levels personal accusations against Polylast's counsel and its principal, including gender-based insinuations, unsupported allegations of improper personal relationships, accusations of "fraud," and references to unrelated personal history. None of these allegations relate to this lawsuit. They appear designed solely to harass, distract, and prejudice the Court. Courts in this Circuit and elsewhere have consistently struck filings containing such ad hominem attacks, recognizing that they undermine both the integrity of the proceedings and the fairness owed to litigants and their counsel.

22

Third, the filing contains extensive extra-record factual assertions that are inadmissible even if submitted by a party, much less by a non-party purporting to act as amicus. Laurence's statements are unsworn, unsupported, speculative, and in many instances demonstrably false. An amicus brief is not a vehicle for introducing "evidence" or factual narratives. Courts strike filings that attempt to circumvent the rules of evidence by embedding factual assertions in unauthorized submissions.

Fourth, the filing includes confidential business information and references to privileged communications that Laurence has no right to possess, disclose, or attempt to litigate. Much of what Laurence cites involves matters he misinterprets, misunderstands, or did not witness. His attempt to publish this material through a purported "amicus" filing underscores the improper purpose behind the submission and warrants striking it from the docket.

Fifth, the submission undermines the Court's ability to manage the litigation and threatens to derail the orderly progression of the case. Allowing a non-party to inject extensive and contrived factual allegations — none of which bear on the issues before the Court — would invite further collateral disputes, require needless responses, and burden the Court with matters far outside the scope of this action. Courts routinely strike filings to prevent this type of disruption.

Sixth, the Court possesses inherent authority to strike filings that constitute abuse of process or that threaten the integrity of judicial proceedings. Laurence's submission—filed without authorization, mailed directly to chambers, replete with hearsay and personal attacks, and aimed at influencing the case through improper channels—fits squarely within the category of filings federal courts remove to preserve fairness and order. Exercising that authority here is not only warranted but necessary to prevent further misuse of the Court's docket.

Finally, Laurence's assertions concerning standing, capacity, and ownership also conflict with the record already before the Court. Polylast has fully addressed these issues in its response to the Court's Order (Dkt. No. 83), which explains in detail (1) that Polylast Systems, LLC is the same legal entity that filed this action, (2) that the membership interests were validly transferred by Peter Laurence during his lifetime, and (3) that no successor trustee has challenged that transfer. Laurence's filing attempts to reargue matters the parties have already briefed and to contradict sworn and documentary evidence with unsworn speculation, falsities, and rumors. Nothing in his submission alters the legal conclusions set forth in Polylast's prior filing.

For these reasons, the Court should strike Laurence's submission in its entirety under Rule 12(f) and its inherent authority to manage and protect the integrity of its proceedings.

## VIII. NOTICE OF IMPROPER EX PARTE COMMUNICATIONS AND VIOLATIONS OF LOCAL RULE 5.1(D)

In addition to the substantive and procedural defects identified above, Laurence's submission warrants separate attention because it constitutes an improper ex parte communication with the Court. A non-party mailed the document directly to chambers and caused it to appear on the docket without authorization. This violates both the letter and spirit of the governing procedural rules.

Local Civil Rule 5.1(d) expressly prohibits parties—and certainly non-parties—from sending filings or correspondence directly to chambers except as expressly permitted. Federal courts guard strictly against such communications because they risk conveying one-sided information outside the adversarial process, undermine confidence in the fairness of the

proceedings, and may improperly influence or burden the Court. Laurence's conduct did all three.

This was not inadvertent. The envelope accompanying the submission reflects a deliberate attempt to bypass the standard filing mechanisms and transmit materials directly to the Court. A non-party may not submit arguments, factual allegations, or purported "evidence" by mailing them directly to a judge. Doing so is improper, unauthorized, and raises serious concerns about the integrity of the process.

Furthermore, the Court's November 17 Order (Dkt. No 81) underscored that any filing by Laurence required a for leave and full compliance with the procedural rules. Laurence ignored these instructions and sought instead to reach the Court through an ex parte channel. This disregard for the Court's directives is itself a basis to strike the submission.

Courts routinely strike filings that result from improper ex parte communication, and they do so irrespective of the content of the filing, to preserve the fairness and impartiality of the judicial process. Striking Laurence's submission is necessary here to protect the integrity of these proceedings and to deter similar misconduct.

Polylast notes this issue to ensure the Court is fully aware of the procedural irregularity and to prevent any suggestion that the Plaintiff acquiesced in or condoned Laurence's improper conduct. The responsibility for this violation lies solely with Laurence.

For these reasons, and independent of all other grounds discussed in this motion, Laurence's submission should be stricken from the docket as an improper ex parte communication.

## IX. CONCLUSION

Laurence's submission is not an amicus brief, and it most certainly is not a motion for leave of Court to file an amicus brief. It is an unauthorized, ex parte, hearsay-laden attack on Polylast, its principal, and its counsel. It disregards this Court's explicit Order (Dkt. No. 81), violates the Federal Rules and Local Rules, and serves no legitimate purpose in this litigation. A filing that so brazenly ignores Rule 11, attempts to expand the factual record with inadmissible speculation, and weaponizes personal accusations against non-parties and counsel has no place on the docket of a federal court. Additionally, nothing in Laurence's submission alters or undermines the legal and factual positions Polylast has already presented to the Court in its prior briefing (Dkt. No. 83), which remain the only competent evidence before the Court.

Amicus participation is a narrow exception—not a loophole for disgruntled beneficiaries to air private grievances, relitigate internal trust matters, or attempt to disrupt ongoing litigation. Laurence is not a trustee, not a fiduciary, and not a neutral party. He has no authority to speak for the Peter Laurence Living Trust or for Polylast. His filing presents no legal analysis, no issue of public importance, and no assistance to the Court. Instead, it is composed almost entirely of unsworn factual assertions, conjecture, and scandalous personal accusations that would be improper even if offered by a party—much less by a non-party who lacks standing and personal knowledge.

Most egregiously, the filing contains inflammatory and discriminatory attacks directed at Polylast's principal and its counsel. These gender-based insinuations and personal smears are wholly irrelevant, unsupported by any evidence, and appear designed solely to prejudice and embarrass. Federal courts do not tolerate filings that attempt to derail litigation by maligning attorneys or parties with rumor, innuendo, or personal accusations untethered to any legal or

factual issue before the Court. Courts routinely strike such filings precisely to safeguard the integrity of proceedings and the fairness owed to all litigants.

Allowing this filing to remain on the docket would reward misconduct, condone violations of the Court's Order, and invite further abuse of process by encouraging non-parties to bypass the rules governing pleadings, evidence, and attorney conduct. Rule 12(f) authorizes the Court to strike "redundant, immaterial, impertinent, or scandalous matter," and Laurence's submission falls squarely within each of those categories. The Court also retains inherent authority to protect the administration of justice by removing filings that undermine the dignity of the Court or the fairness of proceedings.

Polylast does not move to strike lightly. It does so because Laurence's filing crosses every boundary: procedural, substantive, ethical, and professional. If left unaddressed, the accusations within it—none of which relate to any pending legal question—risk unfairly tainting the Court's perception of Polylast, its principal, and its counsel. The Court should not permit such a document to remain part of the record.

Polylast submits this motion solely to ensure the integrity of the record and the orderly administration of justice.

Accordingly, Plaintiff respectfully requests that the Court:

1.    deny any request by Laurence for leave to participate as an amicus;

2.    strike the submission from the docket in its entirety as procedurally improper, immaterial, impertinent, and scandalous; and

3.      in the alternative, at minimum, strike or expressly disregard all allegations concerning Polylast's counsel, Mr. Soto, and all other irrelevant and inflammatory assertions that bear no relationship to any legal issue before the Court— without prejudice to Polylast's ability to seek sanctions or other appropriate relief for Laurence's conduct.

Dated: December 4, 2025

Respectfully submitted,

LEMICK LAW, LTD.
2460 Dundee Rd., Suite 474
Northbrook, IL 60065
847/409-3988
tlemick@lemicklaw.com

By: ___/s/ Taylor Lemick_____
Taylor Lemick
State Bar No. 6327224
With local counsel:
Gossett, Harrison, Millican & Stipanovic, P.C.
Paul D. Stipanovic
State Bar No. 00795669

COUNSEL FOR PLAINTIFF, POLYLAST
SYSTEMS, LLC

**Certificate of Conference**

Pursuant to Local Civil Rule 7.1, on December 3, 2025, I contacted counsel for Defendants to determine whether they oppose Plaintiff's Motion to Strike the filing submitted by non-party David Laurence. Defendants' counsel did not indicate whether Defendants oppose or do not oppose the motion. Instead, counsel stated only that they were "not opposed to the Amicus insofar as it seeks clarity" and requested documents outside of any pending discovery process. Because Defendants' counsel did not provide a position on the relief requested in the motion as required by Local Rule 7.1, the motion is filed as opposed.

A conference with David Laurence was not conducted because he is not a party, is not counsel of record, is not authorized to participate in motion practice, and Local Rule 7.1 requires conferral only with "each party affected by the requested relief."

\s\  Taylor Lemick
Taylor Lemick

**Certificate of Service**

I hereby certify that on December 4, 2025, I electronically filed the foregoing Plaintiff's Motion to Strike and Response in Opposition to the Purported Amicus Brief of Non-Party David Laurence with the Clerk of Court using the CM/ECF system, which will automatically send notice of such filing to all counsel of record.

To the extent non-party David Laurence seeks to participate in this matter, he is not registered with the Court's CM/ECF system and is not authorized to receive filings through CM/ECF. Accordingly, and solely out of an abundance of caution and in compliance with

Federal Rule of Civil Procedure 5, a copy of this filing will be placed in the U.S. Mail or with a reliable commercial carrier (such as FedEx) on December 4, 2025, and sent to the address he provided in his unsolicited submission:

> David Laurence
> 3316 E Vallejo Ct
> Gilbert, AZ 85298

Service is made only because the Local Rules require service of filed papers and should not be construed as acknowledgment that Laurence is a party, has standing, or is entitled to receive filings or participate in this litigation in any form.

\s\   Taylor Lemick
Taylor Lemick

30