UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | | |
|---|---|---|
| POLYLAST SYSTEMS, LLC | § | |
|    Plaintiff | § | |
| | § | |
| | § | |
| v. | § | No. 6:25–cv–040–H |
| | § | |
| LOUIE HAYWARD, et al., | § | |
|    Defendants | § | |

**<u>NON-PARTY TAYLOR LEMICK'S RESPONSE TO ORDER TO SHOW CAUSE</u>**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE JAMES WESLEY HENDRIX:

Non-Party Taylor Lemick ("Lemick"), counsel for Polylast Systems, LLC ("Polylast"), files her Response to the Court's Order to Show Cause, and in support thereof would show:

**I      <u>RESPONSE</u>**

1.1      Lemick's involvement with the underlying issues in this case began in June of 2024, when she was retained by FreshTek in relation to its possible acquisition of Polylast. Lemick only represented Freshtek during the acquisition process. Lemick did not draft the Patent Assignment or the Exclusive IP License and Enforcement Agreement for Polylast; her sole involvement with the patents was submitting the Patent Assignment to the United States Patent and Trademark Office on Polylast's behalf and at its direction. At the time, Lemick did not (and had not been retained to) substantively review the assignment, analyze the assignment, or analyze its effects on Polylast's ability to pursue the patent claims which form the basis of the instant suit—her participation was administrative in nature.

1.2      Before the aforementioned acquisition process, Polylast's prior ownership entered into discussions with defendants Louis Hayward and Hayward Bros Inc. (collectively the "Hayward Defendants") concerning potential investment in Polylast and a broader business

relationship. Neither Lemick nor her client at the time was involved in those discussions. Lemick did not draft the nondisclosure agreements at issue.

1.3    Upon being retained by Polylast in connection with the instant action, Lemick requested documents relevant to Polylast's claims and received a document which, unbeknownst to her, combined the language of two separate nondisclosure agreements into a single document. As she was not involved with the Polylast–Hayward discussions, Lemick had no prior knowledge of the NDAs, or the fact that there were two separate agreements, rather than one. Lemick therefore believed only a single NDA existed. Lemick did not receive copies of the *two separate* NDA's until around the time of the Rule 26(f) conference. As her involvement with the Patent Assignment was limited to submitting it to the USPTO, Lemick was unaware of the existence of the Exclusive IP License and Enforcement Agreement upon her retention and, did not have a reason to suspect Polylast lacked standing. Nor did the client ask her to separately analyze Polylast's standing to bring its claims, as the instant suit had been filed by previous counsel and had been pending for four months.

1.4    At the time of the filing of Polylast's Response to Defendants' Motion to Dismiss (Doc. 28), Lemick  believed that Polylast had standing to bring its claims and that there was only a single NDA.

1.5    The issue of the transfer of patents to King Coast and Polylast's possible lack of standing was first raised to Lemick by Defendants during the Rule 26(f) conference. Lemick requested, and was provided, the relevant documents from her client, and promptly informed the Court (via the parties' Joint Status Report, Doc. 44) of the patents' transfer to King Coast and Polylast's intention to amend its complaint in an effort to cure said issue.

1.6    At the time of the filing of the Amended Complaint (Doc. 56), Lemick, having reviewed the Exclusive IP License and Enforcement Agreement in good faith believed that such agreement provided Polylast with both capacity and standing to bring its claims against Defendants.

1.7    In drafting the NDA allegations in the Amended Complaint (Doc. 56), Lemick's intention was to discuss the NDAs within the context of the negotiations and planned business relationship between Polylast and the Hayward Defendants as she understood them (and as related to her by her client). From her understanding, the NDAs were intended to allow the Hayward Defendants to review Polylast's confidential proprietary information in contemplation of a business relationship, and that Polylast would invoke the provisions providing for the return and/or destruction of the confidential proprietary information should the planned business relationship fall through. Lemick did not intend to represent to the Court (or to Defendants) that the NDAs contained language explicitly stating the purpose of the NDAs or the triggering event for Polylast to invoke the return/destruction provisions. Instead, she was attempting to give broader context surrounding the creation and execution of the NDAs. The NDAs were attached so the Court and Defendants could review their language. Before filing the Amended Complaint, Lemick gave the draft to her client for review multiple times to verify the factual allegations contained therein. While Lemick acknowledges she is responsible for the allegations within the Amended Complaint, she relied upon the documents and information provided to her by her client, and by the prior owner of Polylast, who had firsthand knowledge.

1.8    The NDA allegations in the Amended Complaint were written with the intention that they provide a holistic overview of the circumstances surrounding the NDAs and their purpose within the negotiations between Polylast and the Hayward Defendants. It is with this mindset that

Lemick viewed such allegations, and at the time of drafting, it was her belief that the description of the NDAs within the Amended Complaint accomplished this goal. However, Lemick acknowledges that, upon reading with fresh eyes, the allegations can be fairly read to suggest that the NDAs contained language that does not exist. This was not Lemick's intention. Lemick regrets that she did not spot that the language in the complaint could be construed this way and apologizes for any confusion that her imprecise language has caused.

1.9     Rule 11(b)(3) of the Federal Rules of Civil Procedure provides:

[b]y presenting to the court a pleading, written motion, or other paper…an attorney…certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances…the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Civ. P. 11. At the time of the Response's filing, Lemick was unaware of the licensing agreement and, to the best of her knowledge, believed that Polylast had standing to bring its claims. Lemick also was under the belief, to the best of her knowledge, that only a single NDA existed, as that was what had been provided to her at the time. Upon learning of the standing issue, Lemick promptly informed the Court of the issue and her intention to amend Polylast's complaint to address the state of the patents' ownership. After reviewing the Exclusive IP License and Enforcement Agreement, she believed such agreement vested Polylast with standing to pursue its claims. Lemick also moved to join King Coast as a Plaintiff, as she believed doing so could also cure the standing issue, and that such joinder was allowable under the relevant authority—the Court denied the motion. Finally, while Lemick concedes that the NDA allegations in the Amended Complaint did not sufficiently distinguish between the language of the NDAs and the surrounding circumstances, it was not her intention to misrepresent the language of the NDAs. This is supported

by the fact that Lemick attached the NDAs to the Amended Complaint so all concerned could review such language.

1.10    As the allegations in both the Response to Defendants' Motion to Dismiss and the Amended Complaint both reflected Lemick's best knowledge at the time of their respective filings, Lemick believes she did not violate the duty of candor under Rule 11, and sanctions are not warranted.

## II      PRAYER

Taylor Lemick prays the Court find that she did not violate the duty of candor under Rule 11, that sanctions are not warranted, and for all other relief to which she is entitled.

Respectfully Submitted,

THOMPSON COE COUSINS & IRONS, L.L.P.

By:/s/ *Cory S. Reed*
       Cory S. Reed
       State Bar No. 24076640
       4400 Post Oak Pkwy, Suite 1000
       Houston, Texas 77027
       Telephone: (713) 403-8200
       Facsimile: (713) 403-8299
       Email: creed@thompsoncoe.com

**ATTORNEYS FOR NON-PARTY**
**TAYLOR LEMICK**

## CERTIFICATE OF SERVICE

This is to certify that on the 31st day of July, 2026 a true and correct copy of the foregoing was served on counsel of record by electronic notice and/or certified mail return receipt requested.

/s/ *Cory S. Reed*
Cory S. Reed